# Court of Appeals.

*January*, 1883.

## BORK *v.* PEOPLE.

(Affirming 1 *N. Y. Crim. Rep.* 368.)

PECULATION.—CONVERSION.—THE "PECULATION ACT," L. 1875, ch. 19.—INDICTMENT.—BONDS OF MUNICIPAL CORPORATION.

Where an offense may be committed by doing any one of several things, the indictment may, in a single count, group them together and charge the defendant to have committed them all, and a conviction may be had on proof of the commission of any one of them.

Certain bonds of the city of Buffalo held by the comptroller for said city, were by him delivered to defendant, at that time treasurer of the city, to be sold on behalf thereof. It was no part of the treasurer's duty to sell the bonds. Defendant sold them through a broker, and directed him to credit the proceeds of a portion of them to Lyon & Co., a firm of which defendant was a member. *Held*, that this was a conversion by defendant.

The Peculation Act. L. 1875, ch. 19, applies to cases within its general language, whether the offender be an officer, agent, servant having the custody of the funds charged to have been misappropriated, or owing a special duty in relation thereto, or a private individual having no official or other confidential relation to the state or municipality defrauded by his act. Therefore, it was unnecessary to aver in the indictment the fiduciary relation of defendant.

The evidence that defendant was in fact treasurer, was, however, admissible. It was one of the facts of the case and tended to illustrate and explain other pertinent facts.

The bonds, when received by defendant from the comptroller, being complete in form and capable of becoming effective instruments by delivery to a *bona fide* holder, they were, though unissued, property within the meaning of the statute, L. 1875, ch. 19, and were properly described as *bonds* in the indictment.

It was not necessary to aver in the indictment that the bonds were held on behalf of "any public or governmental interest," that being necessarily implied from the description in the indictment.

The indictment having alleged that the bonds were the property of the city, it was unnecessary that it should further allege that they were negotiable. This was matter of description.

Such a question could be made on the trial, and cannot be raised by demurrer or in arrest of judgment.

An affidavit was made by defendant in a civil action to the effect that members of the firm of Lyon & Co. knew of his frauds on the city of Buffalo, and that the entire proceeds of his embezzlements went into the hands of, and formed the only capital of that firm; that between October 18, 1873, and July 16, 1875, $86,410.06 were given to the firm by defendant out of the city's moneys. No specific mention of the bonds mentioned in this indictment or their proceeds, appeared in this affidavit. *Held*, that the affidavit was admissible in this action as tending to show the fraudulent purpose of defendant in directing the proceeds of the bonds to be credited to that firm.

Writ of error to review a judgment of the Supreme Court General Term, in the Fourth Department (reported *ante*, p. 368), of May, 1882, affirming a judgment of the Court of Oyer and Terminer of Erie county, convicting defendant of peculation.

The facts in this case have been heretofore given (*ante*, p. 369), and need not be here repeated.

The affidavit referred to, in the opinion of the Court of Appeals, is an affidavit made by defendant in a civil action brought against him and other members of the firm of Lyon, Bork & Co., and Lyon & Co., by the city of Buffalo.

In this affidavit Bork states, among other things, that two of the other members of said firms knew of his frauds on the city of Buffalo; that between October 18, 1873, and July 16, 1875, he placed in the business of said firms the sum of $86,410.06, which money, belonging to the city of Buffalo, was used by said firms, or by the members thereof; that the amount of the deficiency in the treasurer's office is about $360,000, and that every dollar of said amount went through the hands of said firms; that these sums of money in their hands, from time to time, represented their capital, and that the individual members had no capital in said business.

*Sprague, Morey & Sprague*, attorneys, *George Comstock*, counsel for prisoner, plaintiff in error.—I. It being a well-known rule of the common law, and our statute is no change from that rule, that trespass and asportation were essential to the crime of

larceny, the result was that a person intrusted by the owner with possession of the chattel could not be guilty of larceny.

To reach the cases of larcenious appropriations by persons in fiduciary capacities, our statutes (2 R. S. p. 678, §§ 59, 60, as amended by L. 1874, ch. 228) have created the law of embezzlement, including embezzlement by an " officer, agent, clerk or servant of a municipal corporation." All the legislation, having general application relating to embezzlement, is found in this statute.

Bearing in view this fact, it throws light on the purpose of the statute under which defendant was indicted. L. 1875, ch. 19.

Unless the purpose of this last statute is confined wholly to a variation between the punishment it authorizes and the punishment of larceny and embezzlement, it creates a new offense previously unknown to our laws.

It was intended to make something criminal which was not criminal before. This new offense, however, does not partake in the least degree of an embezzlement, because the statute does not deal at all with the fiduciary relations to which the crime of embezzlement is confined. It is a new species of larceny, confined to public property, *minus* the trespass and asportation, but not *minus* the evil intent committed, not by public servants in custody of such property, but by persons who fraudulently obtain and receive the property from said servants. The offender is only described as " every person." The offense is not obtaining, receiving, etc., by servants, agents, or officers, etc., but the taking, receiving, etc., from them. This act reverses the relations on which the law of embezzlement is based, and contemplates a case in which municipal or public funds or property are taken or received *from* the servant, agent, etc., instead of being embezzled *by* persons in those relations.

This offense, therefore, is not embezzlement, and it is equally clear it is not larceny, there being no trespass and asportation of the property against the will of the owner. The mode of receiving or obtaining the property is indifferent under this new statute, provided there is a criminal intent to defraud.

The facts in evidence show a plain breach of trust on the part of defendant, and that he had committed the offense of

embezzlement of the city funds under the statute first cited, provided such breach of trust was felonious and fraudulent; in other words, if he intended to deprive the city of such funds. Assuming that he had such intention, then the offense was embezzlement, and he should have been indicted for that offense and not for peculation.    The theory of the prosecution entirely overlooks the official character and defalcation of defendant as city treasurer.    And we find "Joseph Bork," a simple citizen, indicted for obtaining and receiving certain bonds from the city comptroller.    To establish this offense, it was only proved that he misappropriated some of the proceeds of the sale of a small portion of these bonds.

II.    The averment of the indictment is, that "Joseph Bork, feloniously, fraudulently, wickedly and wrongfully, did obtain and receive from the comptroller, and convert to his own use, and dispose of one hundred bonds, etc."    The offense so described was complete when defendant feloniously or wrongfully *obtained* the bonds; that was the conversion *per se*, and that allegation derives no additional force from the expletives that follow.    Commonwealth *v.* Simpson, 9 Metcalf, 138.    If the offense of obtaining was not proved, then defendant should have been acquitted.

In the statute, the words descriptive of the offense are in the disjunctive, according to plain interpretation, thus: "obtain," or "receive," or "convert," or "dispose of."    But the indictment, instead of fixing on one of these modes of committing the offense, or upon more than one in several counts, so as to meet the several different phases of the evidence, has jumbled them all into a conjunctive expression.    It is, therefore, a case of describing several different and indictable acts in one count or averment, or else all the words after "obtain" are mere surplusage.

III.    The defendant is innocent, upon the undisputed evidence, of the crime charged, and the court should have so held.

The testimony shows that without any request or even suggestion on part of defendant, the bonds were delivered to him by the city comptroller to be sold pursuant to a recognized usage in the financial department of the city government.

If fiduciary relations characterize the possession of defendant, the crime of embezzlement may be committed, but Bork is not indicted for embezzlement.

IV. The affidavit of Bork made in the civil action was improperly admitted in evidence.

While it is true in many cases that the conduct of an accused person subsequent to his alleged offense is admissible in evidence, the rule is distinctly against the admission of proof of an independent and distinct crime, for the purpose of establishing the offense which is the subject of the trial. Coleman *v.* People, 55 *N. Y.* 81; People *v.* Dowling, 84 *N. Y.* 478; Commonwealth *v.* Simpson, 9 *Metcalf* 138.

V. The motion to quash the indictment should have been granted.

*a.* The indictment shows on its face that the bonds had never been issued by the city at the time of the alleged offense of feloniously " obtaining" and " receiving" them from the comptroller. Therefore they cannot be the subject of the crime described in the statute. People *v.* Loomis, 4 *Denio* 380.

*b.* It does not even show that the bonds were negotiable by a delivery so as to admit the possibility that they might be used to create an obligation against the city. To call them " bonds" is not saying that they were " negotiable."

In the statute of embezzlement (2 Rev. Stat. p. 678), the descriptive words are "right in action, valuable security" etc. (§ 89). But it required § 60 specially enacted to make those words include an unissued evidence of debt, and that only when negotiable by delivery. But no such special provision enlarges the descriptive words in the statute of larceny or in the Peculation Act under discussion.

*c.* Nothing in the indictment shows that the bonds were authorized and valid instruments. It sets forth no law or authority whatever in pursuance of which the bonds were created.

*d.* It contains no averment that the bonds were held or owned on behalf of a " public or governmental interest," Upon the question now discussed, see Wood *v.* People, 53 *N. Y.* 511; People *v.* Allen, 5 *Denio*, 76; Lohman *v.* People, 1 *N. Y.* 380; People *v.* Payne, 3 *Denio*, 88.

*Edward W. Hatch,* district attorney, for the people, respondent.—I. The embezzlement, as defined by 2 Rev. Stat. p. 678, has no application to this case because that statute relates, so far as it is applicable to officers, agents, etc., of municipal corporations, only to those who receive the property by virtue of their employment or office.

It has no application to a person who receives from an officer, etc., of a municipal corporation, unless he receives by virtue of his employment or office.

It is self-evident that the defendant neither did nor could receive the bonds by virtue of his employment or office, and that the only persons who could legally create and have the custody of the bonds were the mayor and comptroller. All that defendant could receive by virtue of his office was the proceeds of the bonds after their sale by the city.

Defendant could therefore only be indicted under the Peculation Act, L. 1875, ch. 19, for wrongfully obtaining or converting the bonds before sale held by the comptroller of the city of Buffalo.

II.  The language of the indictment is "Then and there feloniously, fraudulently, wickedly and wrongfully did obtain and receive from said Thomas R. Clinton, such officer, and did convert to his, said Joseph Bork's own use, and dispose of one hundred bonds," etc.  It appears by the statute that a person who wrongfully obtains or receives, etc., is guilty of the offense, which may be committed in any one of the ways mentioned.

If a single offense may be committed in a great variety of ways, these may be alleged in one count of the indictment, and proof of the doing of any one act which amounts to the offense is sufficient on the trial to convict.  Bielschofsky *v.* People, 3 *Hun,* 49; 5 *T. & C.* 277, affirmed, 60 *N. Y.* 616; People *v.* Davis, 56 *N. Y.* 95; State *v.* Fancher, 71 *Mo.* 460; People *v.* Frank, 28 *Cal.* 507; People *v.* De La Guerra, 31 *Id.* 459; *Wharton, Precedents,* 2, note 12; *Wharton, Crim. Plead. & Pract.* § 228.

III.  To convict it is not necessary that there should be a *felonious* obtaining or receiving.  The language of the statute is "*wrongfully*" obtain, etc.

Defendant knew that he obtained the bonds for a specific pur-

pose, to wit : to sell and apply the proceeds to the use and benefit of the city. If when he thus received them, he did not intend to use them for the purpose for which they were intrusted to him, but on the contrary intended to convert them to his own use, and in pursuance of that design, did so convert them, then the receiving was wrongful, and under People v. McDonald, 43 N. Y. 61 ; People v. Call, 1 Denio, 120, was even larceny.

IV. The defendant's omission to explain the facts which were proved against him, which were his personal transactions, and necessarily within his own knowledge, furnishes strong evidence against him, and establishes the truth of the inferences insisted upon by the people. Gordon v. People, 33 N. Y. 501 ; People v. Tweed, 5 Hun, 382 ; People v. Dyle, 21 N. Y. 578 ; Brulo v. People, 16 Hun, 119 ; Ormsby v. People, 53 N. Y. 472 ; French v. Maguire, 55 How. 477. And the subsequent acts and admissions of defendant show what his purpose and motive were. They are potent evidence of previous intention. 2 Russell on Crimes, § 54, n.

V. (The portion of the people's points in relation to the propositions that the bonds were the property of the city, and, although unissued, were property within the meaning of the statute, are omitted, being covered by the reasoning of the opinion of the Court of Appeals.)

ANDREWS, Ch. J.—The indictment under which the conviction was had, which is now the subject of review, was found under the act of February 17, 1875 (chap. 19), entitled, "An act to provide more effectually for the punishment of peculation and other wrongs affecting public moneys and rights of property." The first section, which defines the offense of which the defendant was convicted, is as follows : " § 1. Every person who, with intent to defraud, shall wrongfully obtain, receive, convert, pay out, or dispose of, or who, with like intent, by willfully paying, allowing, or auditing any false or unjust claim, or in any other manner or way whatever, shall aid or abet any other in wrongfully obtaining, receiving, converting, paying out, or disposing of, any money, fund, credits, or property, held or owned by this state, or held or owned, officially or otherwise, for or on behalf of any public or governmental interest, by any municipal or other

public corporation, board, officer, agency, or agent of any city, county, town, village or civil division, sub-division, department or portion of this state, shall, upon conviction of such offense, be punished by imprisonment in a state prison for a term not less than three years, nor more than ten years, or by a fine not exceeding five times the loss resulting from the fraudulent act or acts which he shall have so committed, aided or abetted, to be ascertained as hereinafter mentioned, or by both such fine and imprisonment."

The indictment charges, in the conjunctive, that the defendant, with intent to defraud, did feloniously and wrongfully obtain, receive, convert, and dispose of the bonds mentioned. The statute is pointed against the criminal misapplication of public funds or property. The offense may be committed in any one of the several ways mentioned, that is, by receiving, obtaining, converting, etc., such funds or property wrongfully with intent to defraud. It was not necessary to prove that the defendant did all the specific acts charged in the indictment, to justify a conviction. It was sufficient to prove that he did any one of the acts constituting the offense. Where an offense may be committed by doing any one of several things, the indictment may, in a single count, group them together, and charge the defendant to have committed them all, and a conviction may be had on proof of the commission of any one of the things, without proof of the commission of the others. People v. Davis, 56 N. Y. 95.

The question whether the proof established a wrongful receiving by Bork of the City and County Hall bonds, as charged in the indictment, was fully argued by the respective counsel. We do not deem it necessary to determine this question. There is much plausibility in the suggestion, that as the bonds were delivered to Bork by the comptroller, voluntarily, and according to the established course in respect to the bonds of the city, intended for negotiation, and without any request by Bork, or any fraud or artifice on his part to induce the delivery, he could not be deemed to have received or obtained them wrongfully. The fact that Bork was then a defaulter, and that he misappropriated a portion of the bonds soon after they come to his possession, is claimed on the other hand to furnish an

inference that when he received them he intended to defraud the city, and that, if such intention existed, he received them wrongfully within the statute. Whatever may be the correct view of this question, it is unnecessary to decide, for the reason that assuming, as the defendant's counsel contends, that Bork did not wrongfully receive or obtain the bonds, his subsequent delivery of the bonds to the broker in New York for sale, accompanied with a direction to credit Lyon & Co., with the proceeds of sale of twelve of the bonds, was a clear conversion of these bonds, it being his intention, as the jury have found, to appropriate them to the use of his firm. The bonds were delivered by the comptroller to Bork for a specific purpose, viz: for sale in the city of New York for the city of Buffalo. The authority. conferred doubtless included an authority to sell them through a broker according to the custom. But the direction to sell the bonds for and on behalf of the city, was inseparable from the authority to sell, and a sale for his own benefit was not a sale within the power. His direction to sell the bonds and credit the proceeds to Lyon & Co., was the exercise of a dominion over them, inconsistent with the right of the true owner, and was a conversion of the bonds. Whether the indictment, charging Bork with the conversion of the proceeds, might not have been sustained, is not material. That the transaction may be treated as a conversion of the bonds is plain. The principle was decided in Commonwealth *v.* Butterick (100 *Mass.* 1), where it was held that an indictment for the embezzlement of a promissory note, taken by the defendant to be discounted at a bank for another person, was supported by proof that the defendant procured the note to be discounted at the same bank on his own account and the proceeds placed to his own credit. We are therefore, of opinion that the proof sustains the conviction on the merits, unless the learned counsel is right in the contention that, assuming a conversion of the bonds, still the case is not within the statute.

Bork, at the time of this transaction, was treasurer of the city of Buffalo. It is insisted that he received the bonds by virtue of his office as treasurer, or, if not strictly as an official trust, at least as the servant or agent of the city, and that his conversion of them constituted the crime of embezzlement

(2 *R. S.* 678, §§ 59, 60 ; *Laws* 1874, ch. 207). It is further claimed that the statute of 1875 was not intended to apply to the offense of embezzlement, already defined and punishable by existing laws, but was intended to make something criminal, which was not criminal before, and that this new offense, while neither larceny nor embezzlement, was something else of which the ingredient to defraud the public, was the essential element, but which was not before the subject of indictment.     This argument overlooks, we think, the purpose and language of the statute in question.   We have no doubt that frauds by private persons holding no fiduciary relations to the state or a municipality, are within the purview of the act.   But we think the act applies to cases within its general language, whether the offender is an officer, agent, or servant having the custody of the funds charged to have been misappropriated or owing a special duty in relation thereto, or a private individual having no official or other confidential relation to the state or municipality defrauded by his act.

It is a part of the public history of the time, that when the act was passed, public attention had been recently called to gross frauds committed by municipal officers, especially in the city of New York, in the abstraction, diversion, and embezzlement of public funds and property.   The malfeasance of officials intrusted with public means and property, was the danger especially apprehended.   Without their direct act or connivance, it would be difficult to accomplish the frauds against which the statute was aimed.   It was one of the purposes of the act, as the word peculation in the title indicates, and, perhaps, its primary purpose, to afford additional security against the betrayal of official trusts, by imposing severer punishment for embezzlements, or other frauds, when committed by public officers in misapplying public property, than was provided by existing laws.   The language of the statute defining who may be offenders is as broad and comprehensive as possible.   " Every person " is the language used.   The acts constituting the offense include the wrongful *paying* out of public funds, and the willful paying, allowing, or auditing an unjust claim with intent to defraud. These particular acts could ordinarily only be committed by officers or agents having a duty to perform in respect to the

public funds, or clothed with a public trust in the adjustment of claims. Moreover, the second section of the act is framed to meet the case of a wrongful transfer by public officers of deposits in banks of any credit, claim, chose in action, or right, or demand belonging to the public, by which the public right shall be defeated or impaired, and declares that such transfer shall be deemed a conversion within the act. And finally, to put it beyond doubt that offenses punishable by existing laws were not excluded from the purview of the act, it is declared in the third section, that if on any trial (under the act) "it shall appear that the acts of which the defendant was guilty constitute any other crime, he shall not, by reason thereof, be entitled to an acquittal; but after such trial and judgment, he shall not be liable to prosecution for such other crime." It was certainly competent for the Legislature to provide, by an independent statute, that certain acts of embezzlement, punishable by the existing statute, should constitute a distinct offense, and affix a severer punishment than was provided by the general law relating to that class of offenses.

The effect of the construction of the act of 1875, claimed by the defendant, viz.: that it applies to frauds by private persons only, would be to subject them to a much greater punishment than is visited upon faithless officials guilty of embezzlement, a crime of greater turpitude than the fraud of a private person, involving, as it does, in addition to the element of fraud, a breach of public trust, and it is difficult to suppose that such discrimination was intended.

We are of opinion, therefore, that, assuming that the facts proved constitute the crime of embezzlement, the indictment was properly framed, and the conviction legally had, under the statute of 1875. It was unnecessary to aver in the indictment the fiduciary relation of the defendant. In an indictment for embezzlement, under the statute of embezzlement, such an averment is essential (Com. *v.* Simpson, 9 *Met.* 138), because the existence of that relation is an essential element of the crime. Under the statute of 1875, that is not the case, as the offense may be committed either by an officer, servant or agent, or by a person occupying no such position. The evidence that Bork was, in fact, treasurer, was not, however, objectionable.

It was one of the facts of the case, and tended to illustrate and explain other pertinent facts.

The further point was taken on the trial, and is urged on the appeal that the bonds, not having been issued when they were received by Bork, had no intrinsic value, and were not " money, funds, credit or property " of the city of Buffalo, within the descriptive words of the statute. It is incontestable that they did not become valid obligations of the city of Buffalo until they had an inception by the transfer and sale. But they were, when received by Bork, complete in form and capable of becoming effective instruments by delivery to a *bonâ fide* holder. We think they were properly described as bonds in the indictment, and that they were, though unissued, property within the meaning of the statute of 1875.

In People *v.* Wiley (3 *Hill*, 194), the indictment charged the receiving by the defendant of " ten promissory notes, usually called bank-notes, of the value," etc., knowing them to have been stolen. The proof was that the bills were stolen from the bank, whose bills they were, and which, though complete in form, had never been issued. The court sustained the conviction.

In Commonwealth *v.* Rand (7 *Met.* 475), the indictment was for the larceny of certain bank bills which had been redeemed by the bank, and were in the hands of its agent at the time of the theft. The statute of Massachusetts specified bank bills as the subject of larceny, and the court held that the indictment was sufficient.

The counsel for the defendant refers to the case of People *v.* Loomis (4 *Denio* 380), in which it was held that stealing a receipt from the hands of the party whose act it is, it never having taken effect by delivery, is not larceny. The stealing of personal property, and not of personal goods, as at common law, is by the Revised Statutes (2 *R. S.* 679, § 63), larceny, and the words personal property, as used in the chapter containing the section above referred to, are declared to mean " goods, chattels, effects, evidence of rights in action, and all written instruments by which any pecuniary obligation, or any right or title of · property, real or personal, should be created, acknowledged, transferred, increased, defeated, discharged or diminished." An

unissued receipt is not within the descriptive terms of this statute, and if stolen from the person who signed it, it neither defeats, discharges, nor diminishes any right. The only possible consequence is to subject the party signing it to inconvenience, in showing the circumstances under which the possession was obtained, but this element does not make the transaction larceny within the statute. The learned judge who delivered the opinion in People *v.* Loomis, justifies his conclusion by reference to some early English cases, among others, Walsh's case (*R. & R. Cr. Cas.* 215), which arose under Stat. 2 Geo. II., ch. 25, in it was held that a check signed, but not delivered while it remained in the hands of the owner, is not the subject of larceny. By that statute, the stealing of certain written securities was made larceny, but the statute declared that the money due thereon, or secured thereby, and remaining unsatisfied, should be taken as the value of the securities stolen, and the court construed the statute as referring to securities which were valid outstanding securities, and which were, therefore, presumptively of the value of the sum expressed therein, which could not be true of unissued instruments. In the case of Rex *v.* Metcalf (1 *Moody's Cr. Cas.* 433), which arose under Stat. 7 and 8, Geo. IV., ch. 29, § 5 (which, in describing the instruments which are subjects of larceny, uses very nearly the same language as Stat. 2, George II.), it appeared that the prisoner, who was occasionally employed by the prosecutors, having received from them a check on their bankers, payable to a creditor for the purpose of giving it to the creditor, appropriated it to his own use, and it was held by the judges on a case reserved to be a larceny of the check. The same point was ruled in Reg. *v.* Heath (2 *Moody's Cr. Cas.* 33).

The case of People *v.* Loomis was clearly not a case of larceny within the Revised Statutes. It does not control the question now before us, which depends on the construction of the words " money, funds, credits or property," in the act of 1875.

We think the cases of People *v.* Wiley and Commonwealth *v.* Rand (*supra*), support the conclusion we have reached on this branch of the case.

There was no error in admitting in evidence the affidavit of

Bork, made in January, 1876. It tended strongly to establish his fraudulent purpose in directing the proceeds of the twelve bonds to be passed to the credit of Lyon & Co.

The point that the bonds were not averred in the indictment to have been held on behalf of "any public or governmental interest," is not tenable. The bonds of a city which can only be paid by taxation, if property in the corporation, under the statute of 1875, although unissued, as we have held, were public property, and were mainly held for a "public or governmental interest," whatever this somewhat obscure language may mean, and it was not necessary to aver what is necessarily implied, in the description in the indictment. So also it was unnecessary that the indictment should allege that the bonds were negotiable. This was matter of description. The indictment alleges that the bonds were the property of the city, and if the truth of this averment depended upon their negotiable or non-negotiable character, the question could be made on the trial, and could not be raised by demurrer, or on motion in arrest of judgment.

We find no error in the record, and the conviction should therefore be affirmed.

All concur, except RAPALLO, J., absent.

MEM.—After the decision of the Court of Appeals affirming the judgment of affirmance in this case, a motion was made by defendant for a reargument on two grounds, which it was claimed had escaped the attention of the court on the appeal.

I. There is no evidence of a conversion of the bonds in the county of Erie.

II. The verdict is void for want of a finding by the jury of the value of the property converted.

This motion was denied by the Court of Appeals (March 6, 1883), the following opinion being written:

PER CURIAM.—The question whether the verdict is defective is not presented by any exception, and cannot be considered upon this record. Whether a sentence can be imposed upon the verdict is a matter not now before us.

The other point, upon which a reargument is asked, also

raises a question suggested for the first time on this motion. The answer is the same as to the other point—that there is no exception which renders it available here.

The motion for re-argument will therefore be denied.