## SUPREME COURT — APPELLATE DIVISION — SECOND DEPARTMENT.

### May 10, 1918.

### THE PEOPLE v. HENRY M. BENNETT.

(182 App. Div. 871.)

BRIBE—ATTEMPT TO OFFER—PENAL LAW, § 371—SENTENCE.

Where the defendant was indicted, arraigned and tried upon an indictment for "attempted bribery" and the count of the indictment submitted to the jury charged the defendant "did feloniously *attempt* to give and offer and cause to be given and offered * * * the sum of Twelve hundred dollars in money and a promise and agreement therefor," and the verdict was a general one of guilty as charged in the indictment, the court is not empowered to impose a sentence with the maximum of ten years.

SAME.

Under § 371 of the Penal Law, there may be an attempt to commit the crime of offering the bribe.

SAME—FORM OF INDICTMENT.

The indictment following the language of the statute, save the specification of the offense is, instead of disjunctive, conjunctive, was good, and conviction of any one of the offenses was sufficient, *i. e.*, of giving or of offering or of promising, etc.

SAME—EAVESDROPPER WHEN NOT ACCOMPLICE.

An eavesdropper who heard defendant tell another that he could control the vote of a juror in a case on trial and who prosecuted the affair with the knowledge, countenance and approval of the court, the district attorney and the attorneys in the action, was not an accomplice.

SAME.

Evidence *held* sufficient to justify a finding of the guilt of the defendant in attempting to commit the crime of offering a bribe.

Evidence of the justice who presided at the trial in which the defendant was accused of bribing a juror and of the district attorney of the county at the time as to conversations and relations with the so-called eavesdropper, was compentent and properly admitted.

APPEAL by the defendant, Henry M. Bennett, from a judgment of the Supreme Court, Nassau county, rendered against

him on the 9th day of April, 1917, convicting him of the crime of attempted bribery, and also from an order entered in the office of the clerk of said county on the same day denying his motion for a new trial.

*Percy L. Housel (James W. Osborne* with him on the brief), for the appellant.

*Charles R. Weeks, District Attorney (Charles I. Wood, Assistant District Attorney,* with him on the brief), for the respondent.

JENKS, P. J.:

I think that the court was not empowered to impose a sentence with the maximum of ten years. The defendant was indicted, arraigned and tried upon an indictment for "Attempted Bribery." The count of the indictment submitted to the jury charged that the defendant " did feloniously *attempt* to give and offer and cause to be given and offered * * * the sum of Twelve hundred fifty dollars in money and a promise and agreement therefor." The corresponding language of section 371 of the Penal Law under which this count is made reads: "A person who gives or offers, or causes to be given or offered, a bribe," etc., " or any promise or agreement therefor." The verdict was a general one of " guilty." The minutes show that the jury " came into court, and being called, say that they did find the defendant Henry M. Bennett guilty of Attempted Bribery as charged in the indictment," and the order of judgment states: " Indicted for Attempted Bribery and convicted of Attempted Bribery as charged in the indictment by the verdict of a jury * * * . Whereupon it is ordered and adjudged * * * that the said Henry M. Bennett for the felony aforesaid whereof he is convicted, be imprisoned * * * under an indeterminate sentence," etc. The court denied the motion in arrest of judgment, made upon the ground that pursuant to

section 261 of the Penal Law the sentence could not exceed one-half of the term prescribed by said section 371.   The opinion handed down shows that the court concluded that attempted bribery is made a crime by section 371, and where the attempt is the crime the provisions of the Penal Law (260, 261, 262) do not apply.   But, as the court says in its opinion, " It is conceivable that there may be an attempt to commit the crime of offering a bribe," and then proceeds to an illustration, we must conclude that the disposition made by the court rests, not upon its view that any attempt of the crime was impossible, but that the facts in this case excluded the finding of an attempt.   Indeed, the court sustains our conclusion in that, immediately after its illustration of the possibility of an attempt, the court says: " But such are not the facts in this case.   The indictment alleged that defendant caused a promise of a sum of money to be offered a juror, the evidence sustained such allegation, the court charged that such act constituted a crime under section 371 of the Penal Law, and the jury rendered a verdict that defendant was guilty of such crime."   But if the court was right in its conclusion that there could be an *attempt* at the crime, it seems to me that the court was powerless to disregard the verdict and to impose a sentence that was only sanctioned after conviction of the crime itself.   Even if the court thought the crime itself had been committed, the verdict is but " guilty of attempted bribery."   And section 260 of the Penal Law provides: "A person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime was consummated, unless the court, in its discretion, discharges the jury and directs the defendant to be tried for the crime itself."   The court also says in its opinion: " The indictment alleged that defendant caused a promise of a sum of money to be offered a juror."   I do not so read the indictment.   It accuses the defendant of "Attempted Bribery," and charges that he " did feloniously *attempt* to give and offer and cause to be given and offered * * * and a promise and agreement therefor."   I think the

attempt is extended to all of the charging language. But assume that the indictment must be read as charging the crime and not at attempt. Then section 610 of the Penal Law provides: " Upon the trial of an indictment, the prisoner may be convicted of the crime charged therein, or of a lesser degree of the same crime, or *of an attempt to commit the crime so charged.*" If a person is indicted for an attempt at a crime when there is no such thing as an attempt, it does not follow that his conviction for the attempt stands as a conviction of the crime.

I think it germane to consider whether there can be an attempt at this crime as the crime is defined by the said section 371. The learned district attorney in his points goes further than the court to assert that there cannot be an attempt.

The charge of the indictment is that the defendant attempted to give and offer and cause to be given and offered to the juror the sum of $1,250 and a promise and agreement therefor. Thus the indictment follows the statutory language save that the specification of the offense is, instead of disjunctive, conjunctive. The pleading in the conjunctive was good, and conviction of any one of the offenses was sufficient, *i. e.,* of giving, or of offering, or of promising, etc. (Bork v. People, 91 N. Y. 5.)

The argument of the impossibility of any attempt is advanced upon the principle that " there cannot be an attempt of an attempt," and both the learned judge and the learned district attorney cite Darrow v. Family Fund Society (42 Hun, 245, aff'd, 116 N. Y. 537). And the proposition seems to be this: To offer or to promise or to agree is essentially an attempt at *bribery* and hence an attempt to offer or to promise or to agree, etc., is an attempt of an attempt. The fallacy is found in the fact that the statute does not prescribe only that the giving of the bribe (the completed act) is the crime, but also that an offer or a promise or an agreement, each in itself, is the crime. And because this is so, such an offer or promise or agreement is not an attempt at the crime, but such offer, promise or agreement *is* the crime. And an attempt at such offer, promise, or agree-

ment is an attempt to commit said crime, *not* an attempt at an attempt. So when the defendant was charged with an attempt to offer and cause to be offered and promised or agreed he was charged with an attempt of acts that in themselves constituted the crime as defined in the said statute. In Darrow's Case (*supra*) the crime considered was necessarily complete in the attempt inasmuch as the crime was *attempted suicide*. For, as there is not and cannot be the crime of suicide (Penal Law, § 2301), it followed that the very attempt was the complete crime. In State of Nevada v. Sales (2 Nev. 268), which presented the corruption of a jurorr, the Supreme Court dismissed the indictment in application of the principle of Darrow's Case (*supra*). But the court had before it the crime of embracery, which it defined as " an *attempt* by either party, or a stranger, to corrupt or influence a jury." We have a statute against *embracery,* that condemns a person who influences or *attempts* to influence improperly a juror. (Penal Law, § 376.) And the second count of this indictment rested upon it, but that count was withdrawn from the jury. If this indictment for attempted bribery had contained a count that the defendant *attempted* embracery, the argument might have been made that there was an accusation of an attempt of an attempt. But even in the Sales Case (*supra*), where the court applied the principle of an attempt of an attempt because embracery was defined as in itself an attempt, the court nevertheless say: " We see no reason why the defendant might not be indicted and punished for soliciting and inciting another to commit the crime of embracery, if it can be shown that he did so."

I agree with the learned trial court that there can be an attempt to commit the crime in question. I think one may attempt to give or to offer or to cause to be given or offered or to be promised or agreed. Surely so, unless any act *moving towards* the giving or offering or promise or agreement *completes the act.* I find my illustration in the case at bar. McCarthy, as an eavesdropper, heard defendant tell Ferguson

that defendant could control the vote of McQueen, a juror in a case on trial, and intimate that the vote could be bought to their own profit. McCarthy, who knew the defendant, went to him, informed him that he (McCarthy) had overheard that conversation, elbowed out Ferguson as of no importance and represented that he (McCarthy) was the person to deal with. The defendant agreed to meet McCarthy later in the day. In the interval McCarthy informed the court, the district attorney and the counsel in the case, and then met the defendant and the juror. The three men discussed the proposition for the sale of the juror's vote, and the district attorney, an officer and others came in and the defendant was taken forthwith before a magistrate. The theory of the prosecution was that defendant was the go-between of McQueen and McCarthy, and that he sought to market McQueen's vote to McCarthy for $1,250, and that defendant was to receive a like sum for his services. The testimony of McCarthy is that the price was agreed upon and that the defendant said to the juror: "I guess we will have to give them the works," whereupon the juror answered to McCarthy, "You know I am not committing myself here, but, * * * you know me; I am a democrat," and McCarthy said to the juror: "Fred, I am a practical man. I understand what you say perfectly. I think we all understand one another, and as far as I am concerned it is now all right." But at this point, according to McCarthy, the conversation ended. It "ended," but we cannot infer that it was *completed,* because it was interrupted by the coming of the district attorney and the officer. The inference is not violent that but for the interruption the interview would have continued until settlement of the definite terms of sale, and, if this had been brought to pass, an offer might have been made or a promise or an agreement might have come into existence. Pacts to do a "wrong thing" are not likely to be left indefinite in the trust that either party will do "the right thing," nor by common consent relegated to the category of "a gentleman's

agreement." But the testimony fails to show that as a completed thing the money was given or any offer made or caused to be made, or any promise or agreement made or caused to be made. McCarthy does testify that at a stage of the conversation he said that $2,500 would be "satisfactory," but that was previous to his remark in the conversation that "nothing" was "understood." Doubtless the testimony shows that McCarthy appeared ready to buy the juror, the juror appeared ready to sell his vote, and the defendant was active to have the corrupt bargain made, at the time the district attorney appeared in the room. In State v. Harker (4 Harr. [Del.] 559), BOOTH, Ch. J., discussing statutes substantially similar to section 371 of the Penal Law, says: "But there is a clear and distinct meaning to be attached to each of the words 'give,' 'offer,' 'promise,' and 'procure,' as used in the two acts. To give a reward by way of bribe, is to pass or deliver the reward or bribe immediately to another. To offer it, is to present it for acceptance or rejection; to promise it, is to make a declaration or engagement that it shall be given; and to procure it, is to obtain it from others." When, according to McCarthy, the defendant brought him and the juror together and endeavored to have McCarthy purchase the juror's vote, can it be said that the proof shows that McCarthy, at the time the officers appeared upon the scene, had given or offered or promised or agreed? But, according to McCarthy's testimony, the defendant had sought to have McCarthy offer or promise or agree. The jury could rest its verdict upon any one of the offenses enumerated in the statute. (Bork v. People, supra.) I think that they could find an attemp to offer, or to agree, and that certainly they could find an attempt "to give." McCarthy admittedly was doing detective work, and whatever his status the jury were not bound to credit his testimony in its entirety, for much of it was in dispute.

It is entirely logical that the jury fastened upon the concrete thing that was undisputed, namely, that McCarthy at that

interview between him, the defendant and McQueen, handed $100 in marked bills to the defendant, and that the jury concluded from that fact that there was satisfactory proof of an intent to pay the money, or part of it, on account to the juror. But that money never came into the hands of the juror, because the defendant at that interview was compelled to hand it over to the district attorney. Hence the crime of "giving" was never completed, but the jury could infer that the admitted acceptance of the money by the defendant was "An act, done with intent to commit a crime," and, therefore, an attempt. (See Penal Law, § 2.)

Incident to the contention that the proof did not justify submission to the jury, it is argued that there was no corroboration of McCarthy, as he was an accomplice. But the proof is sufficient to sustain the conclusion that McCarthy prosecuted the affair with the knowledge, countenance and approval of the court, the district attorney and the attorneys in the action. I think that he was not an accomplice. (People v. Noelke, 94 N. Y. 137; People v. Mills, 91 App. Div. 331; affd., 178 N. Y. 274, 18 N. Y. Crim. 269.) The testimony of McCarthy even shows that before he took one step in the affair he overheard the defendant stating to Ferguson the defendant's ability to control the juror and the monetary possibilities therefrom, and, therefore, McCarthy "did not lure" defendant "to the commission of crime;" but only offered to him an opportunity. (See People v. Mills, supra, 342.) It is also urged that the record does not show that the juror in person was the object of the attack, or that the money was to go to him with his knowledge and acquiesence. And it is said that the juror, McQueen, was not present when the dickering as to the $2,000 was had between McCarthy and the defendant, and that McCarthy is contradictory and so uncertain as to be unbelievable whether McQueen ever learned of the proposition. But the proposal as to the $2,000 must not be confused with that of $2,500, of which one-half was to be paid to McQueen. And McCarthy testifies that

when he came to the meeting with defendant and McQueen, the defendant said, " It is all off.    *    *    *    It can't be done for $2,000," and thereafter negotiations were renewed upon the basis of $2,500.   According to McCarthy's testimony, the defendant had agreed to have the juror McQueen present at the appointed meeting, with the promise that McCarthy would receive " all the assurance " he wanted, and when the jury came out the defendant tapped McQueen on the shoulder, the two went away and were found together by McCarthy within twenty minutes in the place of meeting agreed upon by McCarthy and the defendant.   When McCarthy entered the bar room, both men invited him into the rear room, where the three sat down together, and thereupon the conversation was had.   If McCarthy's testimony is accepted, it must have been understood by McCarthy and defendant that they were dickering over the corrupt purchase of the vote of McQueen as a juror in the case of Fuller v. Bradley Contracting Co. (183 App. Div. 6) ; and that McQueen not only sat by but also took part in that conversation. Every indication is of the common understanding of McCarthy, the defendant and the juror McQueen, that McQueen (represented in the proposed barter of his vote by the defendant) was to sell his vote as a juror in the case.   The proof justified a finding of guilt in the defendant — McQueen, the juror, was not on trial.

I find no error in the admission of the testimony of the witnesses Van Siclen and Smith.   The former was the Supreme Court justice who presided at the trial of the said case of Fuller v. Bradley Contracting Co.   Mr. Justice VAN SICLEN testified to a conference in his chambers with the attorneys for both sides, whereat the district attorney and McCarthy were present, and that the conference was ordered by the witness after one of the counsel had theretofore spoken to him and after McCarthy had come to him in his chambers with certain statements.   The witness also testified that during the conference one of the counsel for plaintiff stated that he had information

that someone could "get a juror," if not for one side then for the other, and that the witness stated to those present that he had summoned them to hear what had been said and what that particular counsel had to say; and after further conversation the witness had declared that the persons who made such representations should make good and "get him" (referring to the proposed briber), otherwise a gross injustice might be done, not only to the juror, but to every one concerned. The defendant interposed many objections during the testimony of this witness, but the contention of error rests upon the proposition advanced at the trial that McCarthy should "not be allowed to corroborate himself by having a conversation repeated that he narrated to somebody else." But Mr. Justice VAN SICLEN did not attempt to repeat any conversation of McCarthy's; he but testified to the fact that McCarthy had made certain statements. Judge SMITH, who was the district attorney of the county at that time, testified without objection that he had a conversation with McCarthy before the witness went to the hotel where he found McCarthy, defendant and McQueen, and corroborated McCarthy's testimony as to the witness' own conduct and conversation on that occasion. *On cross-examination* he testified as to part of his said conversation with McCarthy prior to that meeting. And he was questioned whether McCarthy had told him that he had given the defendant two fifty-dollar bills; to which he answered "No." "Q. Where did you get two fifty-dollar bills? A. I understood Judge GRAHAM to say —— Q. You got it from Judge GRAHAM? A. There was going to be two fifty-dollar bills, but I was mistaken as to that." Upon redirect examination he was asked what the conversation was with Mr. McCarthy and Judge GRAHAM, and where it took place. This was objected to other than with regard to the two fifty-dollar bills, upon the grounds that the cross-examination had been limited to that feature, and its incompetency, irrelevancy and immateriality. The court finally confined the witness to those "general headings," *i. e.*, to the whole conversation

27

of which a part had been elicited, and the inquiry made as to the two fifty-dollar bills. At the same time the court excluded conversations purporting to repeat what some absent person had said. The principle of the ruling was correct and its application was justified. The court later ruled, over objection and exception, that the People might show the intercourse between the district attorney and McCarthy, upon the theory that the defendant had opened the door by his course of questioning of McCarthy on cross-examination. I find no error. For either the defendant had inquired of the witnesses upon cross-examination so as to make the questions admissible as supplemental, or by his attack upon the cross-examination of McCarthy — aimed at the proposition that his testimony was in part fabricated, or at least wittingly false, that McCarthy was prompted by personal hostility or by ulterior and corrupt motives, that he was unworthy of belief when he posed as an actor in the pursuit of justice, when he was really an accomplice or a self-seeking detective who would stop at nothing to accomplish conviction — made competent McCarthy's relations with the court, district attorney and counsel under the rule of People v. Gardner (144 N. Y. 119, especially 130, 9 N. Y. Crim. 404).

I find no error in the trial; the court tried the case properly, and its conduct of the case is worthy of commendation. I advise that the judgment of conviction and order should be affirmed, but that the sentence should be set aside and that it should be ordered that the defendant be brought before this court for resentence on Friday, May 17, 1918. (See People v. Bergman, 176 App. Div. 318, and cases cited; appeal dismissed, 220 N. Y. 704.)

THOMAS, MILLS, PUTNAM and KELLY, JJ., concurred.

Judgment of conviction and order affirmed. Sentence set aside, and it is ordered that the defendant be brought before this court for resentence on Friday, May 17, 1918. (See People v. Bergman, 176 App. Div. 318, and cases cited; appeal dismissed, 220 N. Y. 704.)