PEOPLE *v.* MOLINS.

(*Court of General Sessions, New York County.* April, 1888.)

1. CONSTITUTIONAL LAW—DEPOSITIONS DE BENE ESSE.
    Depositions in a criminal case, taken *de bene esse,* under a stipulation by counsel that they shall be read on the trial with the same force and effect as if the witnesses had testified, are not open to the objection that defendant is deprived of his constitutional right to be confronted by his accusers.

2. CRIMINAL LAW—ACCOMPLICES—WHO ARE.
    A detective employed to procure testimony on which to predicate a prosecution, who enters into a bargain with defendant with a view to obtaining such evidence against defendant, is not an accomplice.

3. TRADE-MARK—COUNTERFEITING—JURISDICTION OF STATE COURT.
    Act Cong. March 3, 1881, § 7, (21 St. at Large, 502,) relating to trade-marks used in commerce with foreign nations, which provides that any person who shall counterfeit "any trade-mark registered under this act" shall be liable to an action on the case, does not apply to any trade-mark that has not been registered, so as to oust the jurisdiction of a state court in a prosecution for counterfeiting a foreign trade-mark which is not registered under the act of 1881.

4. SAME—PROOF OF OWNERSHIP.
    In order to convict of counterfeiting a trade-mark, the jury must be satisfied that it was the exclusive property of the person alleged in the indictment to be the owner, that the alleged trade-mark was capable of appropriation as such, and that, if ever valid, it has not been abandoned by acquiescence in its use by others.

5. SAME—INTENT TO DEFRAUD.
    Evidence that defendant, in an indictment for counterfeiting a trade-mark by printing copies of the labels used by the owner of the trade-mark, also put on the labels the name of the printer of the original, and that he was found in possession of counterfeits of other labels, is admissible to show his knowledge of the fraudulent intent.

Prosecution of one José S. Molins for counterfeiting a trade-mark, consist-- ing of a cigar manufacturer's label owned by one Juan A. Bances, and partly designed by him, and partly derived by assignment from Partagas & Co., cig- arette manufacturers in Cuba.   The indictment was in several counts, the fifth charging that defendant "unlawfully and knowingly did falsely make and forge a certain trade-mark, to-wit, a certain mark used by Juan A. Bances, to indicate himself as the maker and seller of certain cigarettes, the same being a printed wrapper with the name of him, the said Juan A. Ban- ces, and also certain other letters and words, devices, emblems, figures, and other marks printed thereon, which said trade-mark had been theretofore law- fully adopted by the said Juan A. Bances, and was by him then usually af- fixed to such cigarettes so made and sold by him as aforesaid, to denote that the same were so made and sold."   The sixth count charged that defendant unlawfully and knowingly had counterfeited labels in his possession.

The court denied a motion to quash, made on the ground that it did not have jurisdiction because the trade-mark in question was a foreign trade-- mark, and was governed by Act Cong. March 3, 1881, § 7, (21 St. at Large,. 502,) relating to trade-marks used in commerce with foreign nations, which provides that "any person who shall reproduce, counterfeit, copy, or colorably imitate any trade-mark registered under this act, and affix the same to mer- chandise of substantially the same descriptive properties as those described in the registration, shall be liable to an action on the case for damages for the wrongful use of said trade-mark;" and held that the act applied only to trade-- marks that had been registered, which was not the case with this trade-mark. The court refused defendant's request to charge "that the alleged trade-mark appearing by the evidence to be, if any, a foreign trade-mark, and the pro-- tection of foreign trade-marks and the punishment of their infringement be- ing within the exclusive powers of the congress of the United States under section 8, art. 1, of the constitution, and having been exercised by Act Cong. March 3, 1881, the courts of this state have no jurisdiction to proceed for the punishment of infringement of such trade-marks; and section 364 of the Penal Code, under which this indictment is drawn, does not comprehend the case of such trade-marks."

The court also held that depositions taken *de bene esse,* under a stipulation between the district attorney and the attorney for defendant, which recited that the depositions should be read on the trial with the same force and effect as if they had been given in court on the trial by the witness, were not. open to the objection that their admission would deprive defendant of his con-- stitutional right to be confronted by his accusers; and that *Cancemi* v. *People,* 18 N. Y. 128, in which it was held that it was error to proceed to try a crim- inal case with 11 jurors, though defendant had agreed thereto, involved a dif- ferent principle from a stipulation to take testimony.

The charge of the court was as follows: "*Gentlemen of the Jury*: Under the head of offenses against trade-marks contained in the Penal Code of this state, it is provided that 'a person who knowingly, in a case where provision for the punishment of the offense is not otherwise specially made by statute, (1) falsely makes or counterfeits a trade-mark; or (2) affixes to any article of mer- chandise a false or counterfeit trade-mark, knowing the same to be false or counterfeit, or the genuine trade-mark, or an imitation of the trade-mark, of another, without the latter's consent; or (3) sells or keeps or offers for sale an article of merchandise to which is affixed a false or counterfeit trade-mark, or the genuine trade-mark, or an imitation of the trade-mark, of another, with- out the latter's consent; or (4) has in his possession a counterfeit trade-mark, knowing it to be counterfeit, or a die, plate, brand, or other thing, for the purpose of falsely making or counterfeiting a trade-mark; or (5) makes or sells, or offers to sell or dispose of, or has in his possession with intent to sell or dispose of, an article of merchandise with such a trade-mark as to appear to

indicate the quantity, quality, or character of the article, but not indicating it truly,—is guilty of a misdemeanor.' Section 364. Now, I understand that this indictment embraces the provisions of this statute to which I have just now called your attention. This statute also defines a 'trade-mark;' and you and I are bound by the statutory definition. It is defined in this manner: 'A "trade-mark" is a mark used to indicate the maker, owner, or seller of an article of merchandise, and includes, among other things, any name of a person, or corporation, or any letter, word, device, emblem, figure, seal, stamp, diagram, brand, wrapper, ticket, stopper, label, or other mark, lawfully adopted by him, and usually affixed to an article of merchandise, to indicate that the same was imported, manufactured, produced, sold, compounded, bottled, packed, or otherwise prepared by him; and also a signature or mark used, or commonly placed, by a painter, sculptor, or other artist, upon a painting, drawing, engraving, statue, or other work of art, to indicate that the same was designed or executed by him.' And then there is something referring to works of art. That is the statutory definition of a 'trade-mark.' Now, without referring in detail to the testimony of each witness, which you doubtlessly recollect, it will be sufficient for me to call your attention, generally, to what I understand to be the facts developed in this case; without, however, intending to influence your judgment on any question of fact, because, if I misstate a fact, or if my statements of the facts as I understand them do not agree with your recollection and understanding of fact, of course you are not bound by my statement or conclusion. You are the sole judges of all questions of fact, and it is for you to determine those questions, and not for the court. But, for the purpose of enabling you to apply the provisions of this statute to which I have just now called your attention, it may be, and will be, necessary for me to state what I understand to be the facts as detailed by the various witnesses which have been introduced in the case, and for that purpose only.

"It is claimed that it appears here that, for many years prior to the time mentioned in this indictment, a person by the name of Partagas, a resident of Havana, was engaged in the manufacturing of tobacco and cigars; that this tobacco had acquired a distinction as a superior article of that class, and had acquired in that way a value; and that this person was also engaged in the manufacture of cigars from the tobacco grown by him; and that, for the purpose of designating his tobacco, and his manufacture of tobacco into cigars, he adopted and used a label or trade mark, which had been in use for many years, and up to the time of his decease; that when he died his business and this property became invested in his son by operation of law, and also in this person, J. A. Bances; and that J. A. Bances subsequently acquired whatever interest Partagas' son had in this business, and in this property, and he, from that time down to the present time, has been engaged in carrying on and conducting the business that was originally carried on and conducted by Partagas; with this exception, as I understand from the evidence, (if I am wrong, of course you will correct me,) that Bances commenced to manufacture cigarettes from this Partagas tobacco, so called; and it is claimed here that, by operation of law, Bances became vested with the legal title, and the sole and exclusive right to the use of the label or trade-mark which has been adopted and used by Partagas. He (Bances) then, according to the claim made here on the part of the prosecution,—and I am not aware that there is any conflicting evidence in this case; however, it is for you to say whether there is, gentlemen,—invented a label or trade-mark which has been produced here, and introduced in evidence and proved, if you believe the testimony of the witnesses, for the purpose of covering these cigarettes manufactured by him, and designating them as his manufacture of cigarettes from this Partagas tobacco, and in that label or trade-mark, so called, he embraced this portion which is called the 'ellipse,'—that round portion which formed the label or trade-mark of Partagas. All this—the remaining portion of this label, with

the exception of this ellipse, which you have seen here—it is claimed here is the invention of J. A. Bances, and that no other person had any right to use, or any other firm to use, that label so invented and appropriated by him. Now, there does not appear to be any question in this case as to that fact, as I understand the evidence. However, as I said before, this is a question that you are to determine.

"Now, gentlemen, I have held for certain reasons, not necessary for me to explain further than by saying that under a decision which has been referred to by the defendant's counsel, that that portion, the ellipse, or the Partagas label, is not, so far as the evidence in this case shows, the subject of counterfeiting or forgery. But I do hold that the remaining portion of this label, signed by Juan A. Bances, is the subject of forgery or counterfeiting; that is, that it is an instrument the forgery or counterfeiting of which is punishable under the provisions of this statute to which I have already referred.

"The fifth count contained in this indictment charges as follows: Defendant, ' unlawfully and knowingly, did falsely make and forge a certain trademark, to-wit, a certain mark used by Juan A. Bances to indicate himself as the maker and seller of certain cigarettes, the same being a printed wrapper with the name of him, the said Juan A. Bances, and also certain other letters and words, devices, emblems, figures, and other marks printed thereon, which said trade-mark had been theretofore lawfully adopted by the said Juan A. Bances, and was by him then usually affixed to such cigarettes so made and sold by him as aforesaid, to denote that the same were so made and sold, against the form of the statute.' Now, did this defendant forge this trademark? There is evidence in this case which, it is claimed on the part of the prosecution, established the fact that this defendant was engaged, to a certain extent at least, in carrying on the business of lithographing and printing, with other business; that, on a certain day named, one Johnston applied to him for certain labels, which were to be a counterfeit of the genuine label of J. A. Bances then furnished to him by Johnston, and that this defendant agreed with Johnston, in consideration of his receiving from him a specified sum of money mentioned in the bill, which has been produced here, that he would furnish to him, by a certain time, a certain number of counterfeit labels,—counterfeit of the genuine labels, which he received for the purpose of counterfeiting; and that, in pursuance of that agreement, he did furnish and subsequently deliver, or cause to be delivered, to this man Johnston, a large number—the exact number of which appears on the bill in this case— of counterfeit labels. Now, the defendant himself substantially admits that he received the order; that he undertook to furnish the counterfeit label,—a counterfeit of the pattern label which was delivered to him for that purpose; and that he had furnished those; and that he had caused them to delivered to Johnston, and received a compensation agreed upon between him and Johnston for that number of labels. Now, that is the evidence bearing upon the question of whether he counterfeited that label.

"The first question for you to determine in this case—the evidence is uncontradicted on that point—is whether that was a genuine label belonging to J. A. Bances, which was handed to him by this man Johnston, and subsequently whether this defendant falsely forged or counterfeited it. If that is so, gentlemen, this defendant would be guilty under the fifth count of this indictment. If you come to the conclusion, however, upon the evidence in this case, that that is not so; if you find those facts against the prosecution,— then the next question is under the sixth count,—whether this man had in his possession knowingly false, forged, and counterfeited labels of this description. The same evidence to which I have referred, as bearing upon the questions involved in the fifth count of the indictment, also bear upon the questions involved in the sixth count. Now, if this defendant received a genuine label, believing it to be genuine, and if he entered into an agree-

ment either to forge and counterfeit that label, or to cause or to procure it to be forged and counterfeited, and to deliver a counterfeit of that label, and had it in his possession, knowing it to be a false, forged, and counterfeited label, here, then, he comes within the provision of the sixth count of this indictment.

"In respect to what are the real facts in this case, there is no doubt that this man, according to his own testimony, was engaged in this business of furnishing a very large amount of spurious labels; and that would have a bearing upon the question whether he had those spurious labels in his possession knowing that they were spurious, with a fraudulent intent. It is just like the case of a man having a large quantity of counterfeit money in his pocket. If he was found with one counterfeit bill, endeavoring to pass it, that evidence would not be sufficient to warrant a jury in convicting him of knowing that that was a counterfeit bill; but if, when he is informed that it is a counterfeit, he goes into another place of business, and offers to pass the same bill there, and when he is arrested, and in his possession is found a large quantity of the same character, why, the law authorizes the jury to infer and conclude a guilty knowledge on his part; and it is so in this case. If this man was found with one or two labels,—a small quantity of these labels,—it probably would not be evidence to justify you in coming to the conclusion that he knew that they were false and forged and counterfeit labels. But when you take into consideration the fact that there was found in his possession a large number of those counterfeit labels, and that he was selling them in the way it was claimed by the prosecution, secretly, that he received an order to print them, and that he furnished a large quantity in pursuance of that order, why, of course, it must necessarily have a great bearing on the question of his guilty knowledge.

"Now, there is something which is claimed on the part of the prosecution to be very peculiar in this case. The defendant, it seems, for several years has been engaged in furnishing to various parties labels to be used for the purpose of representing a certain brand of cigars or cigarettes; that he has taken large orders and furnished large quantities of such labels; and yet, with one or two exceptions, he cannot tell you the names of any lithographers or other persons who were engaged, under his orders, in the manufacture of those labels. He seems to forget all, or nearly all, of those names. That may be, or may not be, a circumstance bearing upon the guilt of the defendant, under the two counts of the indictment I have referred to. Now, on the question of the forgery of the label, you have got the testimony of the expert, —the witness who produced those photographs,—and he has pointed out to you the difference between the genuine or the alleged genuine label and alleged forged label. You recollect his testimony. He tells you, based upon his knowledge and skill as an expert in matters which he has testified to, that one is a counterfeit of the other, and that evidence is entirely uncontradicted. Now, in addition to that testimony, you have the other fact, also,— which does not appear to be disputed, if I recollect the evidence aright,—that this genuine label was printed at or near the works or manufactory of J. A. Bances, in Havana, and, of course, any label that was printed here, except by his expressed authority, would be a counterfeit of that genuine label, which was printed in Havana. Again, gentlemen, another little item of evidence was referred to yesterday that may or may not have a bearing upon the question of guilty knowledge; that is, that the name of the original lithographer or printer in Havana also appears upon this alleged forged or counterfeit label; and the undisputed fact is that this alleged forged and counterfeit label was not printed or was not issued by the lithographer who printed and issued the original, and what is claimed to be the genuine, label here. This is a species of fraud, because it was a misrepresentation. It represents on the face of it that it was printed by a person in Havana,—the same person who

appears to have printed the original or supposed or alleged genuine label. That is a badge of fraud, if you find it to exist in this case.

"I have been asked to charge you, gentlemen, and charge you that, 'to render the defendant guilty of the misdemeanor charged, the jury must be satisfied beyond reasonable doubt that his act was done with intent to defraud, and, to show such intent, that the defendant knew the facts constituting the right of the party intended to be defrauded.' Well, gentlemen, if a person knowingly issues a paper which he knows not to be a genuine label, upon the face of which certain representations are made, a jury have a right to infer from that a fraudulent intent,—that, taken in connection with other facts.

"I have also been asked to charge you, and do charge you, that 'the jury, in order to convict, must be satisfied that the label set forth in that indictment was clearly and exclusively the property of Juan A. Bances.' I do so charge. You must be satisfied from the evidence in this case that the label, or that portion of the label which I called your attention to, was the exclusive property of Juan A. Bances.

"I have also been asked to charge you 'that the jury must be satisfied that the alleged trade-mark was capable of appropriation as a trade-mark, and that the use therein of the words descriptive of the articles upon which it was used is not sufficient.' I do charge that, gentlemen, as requested.

"I have also been requested to charge you, and do charge you, 'that the jury must be satisfied that the alleged trade-mark, if ever valid, has not been abandoned by acquiescence in its use by others for a long period,' and I do charge you that. A man may adopt the trade-mark, and it may be a genuine trade-mark, and he may abandon his right to the use of that trade-mark, provided you are satisfied he did actually abandon it, and that abandonment may be no doubt done by his acquiescing in the use of his trade-mark by other persons. Now, is there any evidence in this case whatever which satisfies you that Mr. Bances abandoned his right to the use of this trade-mark, or that he acquiesced in the fraudulent use of his trade-mark by other persons? That is a question for you to determine.

"I am also asked to charge you, and do charge you, 'that the assignee or purchaser of a trade-mark must indicate in his use of it that he is such assignee or purchaser, or he misleads the public.' Well, in ruling as I have, gentlemen, in reference to the ellipse, I have covered, as I understand it, this request to charge. It is not claimed here, nor is there any proof in this case, that that portion of the trade-mark or label which I have submitted to you, as being embraced in this indictment, was the subject of assignment by any person to Bances, or by Bances to any other person. I have already stated, as I understand the testimony, that that portion of the trade-mark or label is the invention and exclusive property, as it is claimed in evidence, of Mr. Bances himself.

"The seventh request to charge I refuse, because I covered it in my charge under the sixth clause. The ninth and tenth requests I have already refused to charge, except as I have already charged upon the subject-matter of these requests.

"Now, gentlemen, I have stated all that I think it is necessary for me to say to enable you to come to a proper conclusion as to the guilt or innocence of this party. He introduced some evidence tending to show that he has so far borne a good character. Well, you are to give that evidence just such weight as you think it justly and properly entitled to, and no more. This being a criminal proceeding, the law requiries you to take that evidence into consideration, with all the other evidence in the case. * * * As to the testimony of Johnston, there was a request to charge which I declined. Johnston was not an 'accomplice,' within the meaning of that term. Johnston has testified that he was a detective, employed by the complainant, Ban-

ces, and that what he did in this case was done for the purpose of obtaining evidence on which to predicate this proscution; and under a very recent decision in the supreme court (and I think the court of appeals afterwards confirmed it) in a lottery case, (*People* v. *Noelke*, 1 N. Y. Crim. R. 495,) the rule was laid down that where a person or an officer, for the purpose of obtaining information on which to predicate a criminal prosecution, makes such a bargain and arrangement as Johnston undoubtedly did in this case, that he is not an 'accomplice,' within the legal meaning of that term; and therefore his testimony, for the purpose of being relied upon by the jury, need not be corroborated; that is, if a person is an accomplice,—one engaged in perpetrating the crime charged, or aiding or assisting in its perpetration,—a jury would have no right to convict upon his uncorroborated testimony; but in this case I charge you that Johnston does not occupy that position of an accomplice, under this recent decision of the court of appeals.   I do not wish you to understand from what I have said that you are not the sole judges of the credibility of the testimony of Johnston.   You have the right to determine the question of whether his testimony is entitled to credence or not.

"Now, upon that question, is there anything in Johnston's manner, or what Johnston has said, or in any transaction with this defendant, that would lead you to believe that he has willfully and corruptly testified to what is false. In many respects he is corroborated by the defendant himself.   In some respects he is contradicted by the defendant.   It is claimed here that in some respects, that where there is a contradiction, it is not on any material matter. But he is corroborated by the defendant so far as the execution of the order for the goods or labels and the payment of the money is concerned.   The defendant corroborates Johnston's testimony, and there is no serious conflict between his testimony and that of Johnston in that respect.   The defendant's testimony is contradicted in some respects, and it is a matter for you to determine whether it is on any material matters; and if it becomes a question for you to determine his credibility in addition to his manner, and the nature of his evidence, you have the right, and it is your duty, to take into consideration that he is here charged with the commission of a criminal offense. It is for you to say whether that would furnish a sufficient motive or inducement for him to come here on the witness stand, and testify untruly in respect to any material fact that he has testified to, for the purpose of relieving himself from the position in which he is placed.

"Now, gentlemen, I repeat again that this is an important case, although it is the lowest grade of crime.   If this man is guilty of this offense, he is guilty of an offense which is a very serious one in every large mercantile community, and it is one for which, if he is guilty of it, he ought to be punished, not only for the purpose of preventing him from the continuous violation of the law, but also for the means of preventing other parties from indulging in like criminal acts.   That is the object of the criminal law, and the object of punishment for criminal offenses.   Your verdict in this case, therefore, will be 'guilty' or 'not guilty' under the fifth and sixth counts of the indictment, or under either count.   If you find him guilty under the fifth count, you will say so.   If you find him guilty under the sixth count, you will say that you find him guilty under the sixth count.   If you find that he not only forged and counterfeited the labels, but also had them in his possession, knowing them to be forged and counterfeited, you will find him guilty under both counts."

*Asst. Dist. Atty. Davis,* for the People.   *Benjamin F. Foster, William B. Ellison, Charles C. Gill,* and *Walter L. McCorkle,* for defendant.

The jury found defendant guilty of having counterfeit labels in his possession, and was fined $350, to stand committed until payment of the fine.   No appeal was taken.