(163 App. Div. 459)

FARLEY, State Excise Com'r, v. BRONX BATH & HOTEL CO. et al.
(No. 6023.)

(Supreme Court, Appellate Division, First Department.   July 10, 1914.)

1. INTOXICATING LIQUORS (§ 163*)—OFFENSES—ILLEGAL SALES—"GUEST."

Liquor Tax Law (Laws 1896, c. 112) § 31, amended by Laws 1903, c 486, § 13, prohibits the sale of intoxicating liquors on Sunday, except that the holder of a certificate who is a keeper of a hotel may sell liquor to the guests of the hotel.   The act further defines a "guest" as a person, who, during the hours when meals are regularly served, resorts to the hotel to obtain and actually orders and obtains a meal therein.   *Held*, that the sale of intoxicants to persons who visited the grill room of a hotel late in the afternoon, and who when they were refused drinks unless they purchased food, bought sandwiches for which they paid but did not eat, is a violation of the statute.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 179; Dec. Dig. § 163.*

For other definitions, see Words and Phrases, vol. 4, pp. 3188–3191; vol. 8, p. 7676.]

2. CRIMINAL LAW (§ 507*)—"ACCOMPLICES."

Special agents, who are confidential agents of the State Excise Commissioner and are required under Liquor Tax Law (Laws 1896, c. 112) § 10, to investigate at his direction and to ascertain whether the law is being violated, are not accomplices, where, for the purpose of obtaining evidence, they purchased liquor on Sunday contrary to law, and so their testimony need not be corroborated.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1082–1096; Dec. Dig. § 507.*]

Dowling, J., dissenting.

Appeal from Trial Term, New York County.

Complaint by William W. Farley, as State Commissioner of Excise, against the Bronx Bath & Hotel Company and another.   From a judgment dismissing the complaint, the Commissioner appeals.   Reversed and remanded.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

Louis M. King, of Schenectady, for appellant.
Charles Goldzier, of New York City, for respondents.

McLAUGHLIN, J.   Action to recover upon a liquor tax bond given by the respondent Bronx Bath & Hotel Company as principal. The complaint alleged the giving of the bond, the issuance of the liquor tax certificate, and a violation of the bond by the selling of liquors on certain Sundays named without serving meals therewith. The answer put in issue the material allegations of the complaint, but at the trial the issuance of the bond and certificate was admitted. · At the close of plaintiff's case the complaint was dismissed, upon the ground, as appears from the opinion of the learned trial justice, that the hotel company had not violated the law by selling the liquors referred to; and it was a fair inference from the evidence that the state, through its special agents, unsuccessfully conspired to procure a viola-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tion of the law. Judgment was entered to this effect, from which the plaintiff appeals.

[1] A very slight consideration of the evidence offered by the plaintiff will demonstrate clearly and conclusively that the defendant sold liquors on the days named to persons who were not guests of the hotel and in direct violation of law.

Section 31 of the Liquor Tax Law (Laws of 1896, c. 112, as amended by Laws of 1903, c. 486) contains a general provision against the sale of liquors on Sunday by any one holding a certificate such as the one under consideration. The general provision, however, is made subject to an exception that the holder of such a certificate "who is the keeper of a hotel may sell liquor to the guests of such a hotel." It then defines a "guest of a hotel" as "a person who, during the hours when meals are regularly served therein, resorts to the hotel for the purpose of obtaining and actually orders and obtains, at such time, in good faith, a meal therein."

As to the violation on the 8th of December, 1912, two special agents employed by the plaintiff testified: That they went to the hotel about 4:15 in the afternoon, entered what was known as the grill room, and took seats at a table. That no meals were then being served. That the tables in the room had covers upon them, but were without knives, forks, spoons, napkins, salt or pepper, or things usually on a table when a meal is to be served. That as soon as they were seated a waiter came in, and each asked to be served with whisky, in response to which the waiter said, "You will have to order something to eat." That he then went out of the room and returned with a menu, which he placed upon the table. That one of the agents then said to him: "We want a drink of whisky; we don't want to eat." And the waiter replied: "I will have to serve you with something. Cheese and ham sandwiches are 10 cents and chicken sandwiches are 20 cents." That one of the agents answered, saying: "Well, bring us anything in order to get a drink; we are not going to eat it anyway." That the waiter then left the room and shortly thereafter returned with two ham sandwiches and a mustard pot, then left and shortly returned with two glasses of whisky and ginger ale. That one of the special agents paid 20 cents for the sandwiches and 20 cents for the whisky, and the other ordered and paid for two more glasses of whisky. That after drinking the whisky the witnesses left, leaving the sandwiches untouched upon the table.

The testimony of these, or other special agents, was quite similar as to each of the other alleged violations; that they were told by the waiter they could not have a drink unless they bought something to eat, in response to which the agents, or one of them, stated, on each occasion, that they did not want to eat, but, if it were necessary to buy something in order to get a drink of liquor, they would do so, and that then a sandwich for each one was bought and paid for, but not eaten.

This was the condition of the evidence at the close of plaintiff's case. In my opinion it established a clear violation of the Liquor Tax Law to which reference has been made. These agents, when they went into the hotel, went there not for the purpose of obtaining and

actually ordering, in good faith, a meal, and the hotel company, acting through its agent, was so informed. It did not change the situation in any respect because sandwiches were ordered, which were paid for. The serving of the sandwiches was but a mere subterfuge resorted to by the hotel company to enable it to violate the law. Subterfuges of this character have been so many times declared to be no protection to the holder of a liquor tax certificate that the citation of authorities is hardly necessary. But see Cullinan v. Waldron, 82 App. Div. 637, 81 N. Y. Supp. 1124; Matter of Cullinan, 93 App. Div. 427, 87 N. Y. Supp. 660; Cullinan v. O'Connor, 100 App. Div. 142, 91 N. Y. Supp. 628; Matter of Clement, 117 App. Div. 5, 102 N. Y. Supp. 37; Matter of Farley, 158 App. Div. 851, 144 N. Y. Supp. 268.

[2] The learned trial justice also erred in reaching the conclusion that the special agents were employed for the purpose of inducing the hotel company to violate the law. The duties of the special agents are prescribed by statute. They are confidential agents of the State Commissioner, and at his direction are required to investigate, among other things, whether the Liquor Tax Law is being violated. Section 10, Liquor Tax Law. If it is being violated, then they are to secure the necessary evidence to establish that fact and when liquors are sold to them, at their request—the purpose being to ascertain whether the law is being violated—it does not make them accomplices in the commission of a crime, nor is it necessary to corroborate their evidence as matter of law to establish the fact that the liquors were sold contrary to law. Cullinan v. Furthman, 187 N. Y. 160, 79 N. E. 989; Clement v. Stratton, 136 App. Div. 83, 120 N. Y. Supp. 624.

My conclusion therefore is that the condition of the evidence at the close of plaintiff's case was such that, if the defendant had offered no evidence, a verdict should have been directed in plaintiff's favor.

It follows that the judgment appealed from should be reversed, and a new trial granted, with costs to appellant to abide event.

INGRAHAM, P. J., and SCOTT and HOTCHKISS, JJ., concur. DOWLING, J., dissents.