THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* ANNA SWIFT, Defendant.

Supreme Court, Special Term, New York County, December 29, 1936.

*William Copeland Dodge, District Attorney [Aiken A. Pope, Deputy Assistant District Attorney*, of counsel], for the plaintiff.

*James D. C. Murray*, for the defendant.

Rosenman, J. The defendant, Anna Swift, was convicted in the Court of Special Sessions of keeping a disorderly house and maintaining a public nuisance in violation of sections 1146 and 1530 of the Penal Law and was sentenced to three months in the workhouse. Pending an appeal from that conviction, she now makes this motion for a certificate of reasonable doubt to be admitted to bail.

The conviction was based principally upon the testimony of two female inmates of the establishment maintained by the defendant and the testimony of a police officer who made several visits to the defendant's house to obtain evidence of guilt and who testified to acts violative of the statute being committed on the premises with him.

It is conceded by the district attorney for the purposes of this motion that the women witnesses were accomplices. The defendant's main contention is that the police officer is also an accomplice, and that, therefore, her conviction cannot stand, because it is based only upon the uncorroborated testimony of accomplices.

" A conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime." (Code Crim. Proc. § 399.)

An accomplice has been defined as " a partaker with others in a crime, whether in the same or a different degree. His guilt must be of the legal sort, not a mere moral or only colorable delinquency." (Bishop's New Criminal Procedure [2d ed.], vol. 2, § 1159.) " Criminal guilt is an essential characteristic of an accomplice. * * * Intent is necessary to make one an accomplice." (Underhill's Criminal Evidence [4th ed.], § 150.) " The generally accepted test as to whether a witness is an accomplice is whether he himself could have been convicted for the offense either as principal or accessory. (*People* v. *Richardson*, 222 N. Y. 103, p. 114.) " (*People* v. *Jackerson*, 247 N. Y. 36, 42.)

The modern doctrine of accomplices as witnesses is a development of the ancient, and now obsolete, doctrine of " approvement." (Bishop's New Criminal Procedure, *supra*, § 1156.)

" And that is when a person indicted of treason or felony, and arraigned for the same, doth confess the fact before plea pleaded, and appeals or accuses others, his accomplices, in the same crime in order to obtain his pardon." If the persons so implicated were convicted, the " approver " received his pardon; if, after his having approved, the party was acquitted, the " approver " was hanged. (4 Blackstone Comm. 330, 331; see, also, *Whiskey Cases*, 99 U. S. 594, 599.)

Later this practice fell into disuse and was replaced by the doctrine of " King's evidence." The practice, under this principle, was to allow an accomplice to testify against his fellow miscreants, so that if he made " a full and complete discovery of that and of all other felonies " and gave " his evidence without prevarication or fraud " he was not " prosecuted for that or any other previous offence of the same degree." (Bishop's New Criminal Procedure, *supra*, § 1158.)

Out of this rule of complete immunity arose the dangerous possibility that an accomplice would falsely accuse others in order to avoid his own penalties. To obviate that danger, a rule of practice was gradually evolved that such testimony of an accomplice had to be corroborated in order to convict.

It became a statute in this State (Code Crim. Proc. [1881] § 399), although it has remained only a rule of practice in England.

" There is no doubt that the uncorrborated evidence of an accomplice is admissible in law and that a jury can convict the prisoner on it, especially when there is in question the evidence of a person who is not so much an accomplice as a victim. But there is a well-established rule of practice, which has become virtually equivalent to a rule of law, by which judges warn juries that it is dangerous to convict a prisoner on such evidence when it is uncorroborated." (Halsbury's Laws of England [2d ed.], vol. 9, p. 222; see, also, *Rex* v. *Atwood and Robbins*, [1787] 1 Leach, 464; *Matter of Meunier* L. R., [1894] 2 Q. B. 415; *Rex* v. *Rudge*, [1923] 17 Cr. App. Rep. 113; *Rex* v. *Tate*, L. R. [1908], 2 K. B. 680, C. C. A.; *Rex* v. *Baskerville*, L. R. [1916] 2 K. B. 658, C. C. A.)

The historical and common-sense reason for the rule requiring corroboration of accomplices, therefore, is that the witness could otherwise transfer responsibility for a crime from his own shoulders to another's. However, if the witness had no intent to commit a crime, so that no criminal guilt could attach to him under any conditions, the motive for giving false testimony on his part would never arise. His exoneration would be based upon his innocence as shown by the facts, rather than upon immunity derived from the testimony he might give. Consequently, if the police officer has no motive in trying to shift the burden from himself to the defendant, the principle of corroboration would not be applicable.

" A decoy is not regarded as an accomplice for the reason that he does not have the same motive to fabricate his story." (Wharton's Criminal Evidence [11th ed.], vol. 2, § 736; see, also, *United States* v. *Becker*, 62 F. [2d] 1007, 1009.)

" Since, as has been seen, criminal intent and culpability is essential to render one an accomplice, it follows that a decoy or

feigned accomplice is not an accomplice within the meaning of the rule requiring the corroboration of the testimony of an accomplice in order to support a conviction." (Wharton's Criminal Evidence, *supra*.)

Was the police officer here guilty of any crime? Did he have an intent to commit *any* crime?

The burden is on the defendant to show that a witness for the State is an accomplice. (*People* v. *Richardson*, *supra*.) The defendant has not sustained such burden. In fact, the contrary is clear — that the police officer was not an accomplice.

In *Reg.* v. *Mullins* (1848) (12 J. P. 776; 14 Digest, 363) and *Rex* v. *Bickley* (1909) (73 J. P. 239, C. C. A.; 14 Digest, 456) it was held that " a person employed by government to mix with conspirators, and so to detect their designs does not require confirmation as an accomplice " and that " a police spy or *agent provocateur* is not an accomplice, and the practice that a jury should not act on the uncorroborated evidence of an accomplice does not apply to the case of such a person."

There is ample reason to support the authority of these precedents.

" A detective entering apparently into a criminal conspiracy already formed for the purpose of exploding it is not an accessory before the fact. For it should be remembered that while detectives, when acting as decoys, may apparently provoke the crime, the essential element of *dolus*, or malicious determination to violate the law, is wanting in their case. And it is only the formal, and not the substantive, part of the crime that they provoke." Although " They may be actuated by the most unworthy motives," the intent to commit the crime is not imputable to them. (Wharton's Criminal Law [12th ed.], vol. 1, § 271.)

" By the weight of authority, a person who, as a detective, associates with criminals or communicates with or aids them solely for the purpose of discovering commission of crime and procuring the punishment of the criminals is not an accomplice, though the person encourages or counsels the others to the commission of the crime with the intent that they shall be punished. Where steps are taken to detect crime, or get evidence by an officer or other person, such person when testifying is not an accomplice." (Underhill's Criminal Evidence, *supra*.)

The attorney for the defendant contends, however, that the witness Cordes did more than that — that he actively engaged in the commission of the crime. But the evidence discloses that he did not prompt the acts or lure defendant into committing them. The defendant sought to commit them, and although the witness is charged with doing improper acts, he merely placed facilities in the way for the defendant to carry out her unlawful purposes.

As was said in *People* v. *Mills* (91 App. Div. 331; affd., 178 N. Y. 274), where the defendant was charged with larceny in the removal of certain files from the district attorney's office (pp. 342 and 343): " the feigning complicity in his acts by the officers for the purpose of his exposure and to bring him to justice were acts which have been frequently employed in many ways and forms to thwart criminal purpose, expose the offender and bring him to justice, and in so doing such officers discharged a public duty and fulfilled the functions which they have been selected to perform. The authorities are abundant supporting the exercise of this right and the performance of this duty, and the perpetrators of criminal acts have never been permitted to shelter themselves thereunder and thereby escape the punishment due to their crimes [citing cases]. * * * The crime itself was not committed against any individual, nor could it be. It was a crime purely against the public, as such. * * * Under such circumstances the mere facilitation for purposes of detection of the defendant in the commission of his offense was in nowise improper, nor can the defendant invoke such acts as a defense."

The district attorney and the attorney for the defendant have both informed the court that there are no reported cases in this State in which the question has been determined whether a police officer with whom an act of prostitution has been committed was an accomplice to the crimes of prostitution or maintaining a disorderly house. Independent research has likewise disclosed none, although it is well known that there have been numerous convictions upon the sole testimony of police officers.

Although there are no such reported cases in this State of crimes such as this defendant's, there are many cases of other crimes where police officers were held not to be accomplices under similar circumstances.

In *People* v. *Noelke* (94 N. Y. 137, 142), in which a policeman had purchased a lottery ticket from the defendant, the court said: " We agree that Mattocks was not an accomplice, since he purchased the ticket to detect and punish a crime, and not with intent to aid in committing one. From the point of view of the prosecution he was a detective; from that of the defendants a spy, or informer; but in no sense a party to the criminal act or intent so as to become an accomplice." (See, also, *People* v. *Levoy*, 72 App. Div. 55, 59, in which the witnesses for the People had procured evidence of violations of the law against wagering on horse races; *Farley* v. *Bronx Bath & Hotel Co.*, 163 App. Div. 459, 462, in which an action was brought on a bond against the sale of intoxicating liquors to two special excise agents on Sundays, unaccompanied by the sale of

food; *People* v. *Bennett*, 182 App. Div. 871, 877; affd., 224 N. Y. 594, in which the defendant endeavored to bribe a juror and was offered an opportunity so to do by a State's witness; *People* v. *Molins*, 10 N. Y. Supp. 130, 135, 136, in which the judge refused to charge the jury that a detective was an accomplice to a scheme to counterfeit trade-marks and that his testimony needed corroboration.)

I conclude, therefore, that the police officer was not an accomplice within the meaning of the statute requiring corroboration of his testimony.

But in addition to his testimony, there was sufficient corroborating evidence before the triers of the fact, viz., the many and various articles found upon the premises at the time of the raid (including the evidence on this point by the witness Salzman) and the testimony of the raiding officers as to what they saw when they entered the premises.

There is no reasonable doubt that the conviction will stand, and the motion is accordingly denied.