Joel J. Tyler, J.
The defendant, Jackson, is charged with prostitution in violation of section 230.00 of the Penal Law, while *794 defendant, Goodman, is charged with promoting prostitution, condemned by section 230.20 of that law.
The questions posed in this action are both unique and intriguing. Extensive research by counsel on both sides and by the court, independently, has revealed no decided case in this State clearly within the ambit of our perplexing problems. And so we embark upon a virgin sea.
The questions:
1. Does a patron of an alleged prostitute (hereinafter sometimes referred to, in the parlance of the trade, as a “ John ”) become her accomplice when he engages or agrees to engage in that extracurricular activity with the prostitute ?
2. Does said patron similarly become an accomplice of a defendant, charged with promoting the afore-mentioned enterprise?
3. Assuming the patron is deemed to he such an accomplice, may the action survive a preliminary hearing and be held over for trial, notwithstanding the People’s failure to present corroborating evidence at the hearing?
Of course, it is clear that “ a defendant may not be convicted ” upon the adverse testimony of an accomplice, unsupported by independently corroborative evidence which would tend ‘ ‘ to connect the defendant with the commission of such offense.” (CPL 60.22, subd. 1).
PROCEEDING AND TESTIMONY
In this preliminary hearing, the People presented two witnesses ; the defendants, none. The alleged patron[1] testified that he arranged by phone to visit certain premises to engage a prostitute, which he previously visited twice for the same purpose. Upon arrival, defendant Goodman admitted him, as she did on the two previous occasions, to the sanctuary of the apartment, and was there introduced to defendant, Jackson, whom he met for the first time. The witness and Jackson then retired to the bedroom, where performance and consideration were given by Jackson, and upon exiting therefrom, the “ John ” fulfilled his obligation in the form of a $15 payment, which he placed upon a table while being cheerfully escorted to the outer door by Goodman— a procedure he followed on his previous visits.
After leaving the apartment, the “ john ” was accosted by a plainclothes officer, upon whose urgings, he revealed the pur *795 pose of Ms visit to the apartment. The totally bewildered patron was arrested and they then returned to the apartment where the two female defendants were also arrested and charged, as aforesaid.
The People’s last witness was Officer Torosian, who testified that he and Ms brother officer had the apartment under surveillance ; he had listened at the door of the apartment, heard the phone ring several times therein, but stated, “ I couldn’t make out what the conversation was except that one part was ‘ O.K., I’ll see you next week ’. ’ ’ They then moved away from the door, but kept the apartment under surveillance, and soon thereafter, our luckless “ john ” appeared, entered and left a short 25 minutes later. The police followed Mm out of the building, stopped him and upon inquiry, the “ ‘ john ’ was very cooperative in telling us what was going on in the apartment.” They returned to the apartment, were admitted by defendant Goodman, and both defendants (then alone) were arrested. The officer further stated that, while in the apartment but a few minutes, the door bell rang. The officer opened the door to an adult male. Defendant Goodman came to the door, said “ Oh, hello uncle, John ”, whereupon the caller turned and left. Upon cross-examination, the officer stated that during the entire time of surveillance he saw no one enter or exit the apartment other than the hapless patron, and the phone did not ring in the apartment during the 10 to 12 minutes the officers remained therein.
THE ARGUMENTS
The defendants claim that a patron of a prostitute is an accomplice, as defined by GPL 60.22 (subd. 2, par. [b]), in that, vis-avis the prostitute and her promoter, he has ‘ ‘ participated in * * * an offense [i.e., patronizing a prostitute] based upon the same or some of the same facts or conduct which constitute the offense charged.” Accordingly, his testimony required corroboration, under subdivision 1 of that section, even in a preliminary hearing, and the testimony of the officer was insufficient to constitute legal corroboration.
Further, they take the unique position that section 230.35 of the Penal Law also clothes a “ john ” in the mantle of an accomplice, since in patronizing a prostitute he was engaging in a “ prostitution activity ” wMch is “ advanced or attempted ” to be advanced, as that term is defined by section 230.15 of the Penal Law, by the promoter of prostitution. Accordingly, the patron’s testimony must be corroborated as against the alleged promoter under this section as well.
*796 The prosecutor contends:
1. That since the cases (People v. Guardino, 177 Misc. 402 [1941], affd. 265 App. Div. 872, affd. 290 N. Y. 749 and People v. Jelke, 1 N Y 2d 321 [1956]) hold that a prostitute is not an accomplice of a procurer or promoter of prostitution, then he asks, how could a ‘ ‘ john ” be an accomplice of a prostitute or her promoter?
2. Section 230.35 of the Penal Law is merely intended to prohibit conviction of a pimp or other promoter of prostitution upon the mere testimony of the working prostitute in his “ stable ” (another term of the trade), and only such testimony requires corroboration under that section. The law was never intended, nor used, to require corroboration of a “john’s” testimony either as against a prostitute or a promoter.
DECISION
At common law, conviction was supportable on the uncorroborated testimony of an accomplice, although that testimony required careful scrutinization to ascertain the measure of his credibility. (Linsday v. People, 5 Hun 104, affd. 63 N. Y. 143 [1875]; Matter of Hardenbrook, 135 App. Div. 634, 636 [1909], affd. 199 N. Y. 539; People v. Swift, 161 Misc. 851, 852-853 [1936], affd. 251 App. Div. 808, affd. 277 N. Y. 618.)
The dangers inherent in this principle were evident; and, therefore, it gradually became customary, even without legislative fiat, for Judges to instruct juries that they should not convict upon uncorroborated evidence of an accomplice. (People v. Doyle, 21 N. Y. 578, 579 [1860]; People v. Everhardt, 104 N. Y. 591, 594 [1887]; People v. Dixon, 231 N. Y. 111, 116 [1921].)
To give legislative sanction to such an unauthorized practice, section 399 of the old Code of Criminal Procedure was enacted in 1881, which forbids conviction upon the uncorroborated evidence of an accomplice. Now, corroboration, wherever necessary, is purely statutory. (People v. Gibson, 301 N. Y. 244, 245, 247 [1950]; People v. Kenler, 184 Misc. 1044,1048 [1945].) Said section survives, substantially unchanged, in CPL 60.22 (subd. 1).
Although we have known by statute, since 1881, that an accomplice’s testimony requires corroboration, it was not until September 1, 1971 that we were given, for the first time, by statute, definitions of the term “ accomplice (See CPL 60.22, subd. 2.)
Prior to this enactment, the courts defined an accomplice as oner indictable as a participant with the accused ‘1 in the criminality of the act.” (People v. Richardson, 222 N. Y. 103, *797 113-114 [1917]; People v. Cohen, 223 N. Y. 406, 425 [1918]). However, those witnesses who were not subject to indictment, but whose involvement with the accused in the crime, although real, was tangential, were not denominated as accomplices. This led to rather anomalous and strained attempts by the courts to artificially broaden the definition of accomplice to include those involved with the accused in reciprocal or correlative crimes. (See Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 11A, CPL 60.22, p. 194.)
CPL 60.22 (subd. 2) is the statutory attempt to give practical meaning to the term ‘1 accomplice ’ ’ and to avoid an unduly restrictive application to its definition. That definition now includes not only those 1 ‘ who * * * may reasonably be considered to have participated in the offense charged ” (subd. 2, par. [a]), but also, as stated in paragraph (b) of subdivision 2, those witnesses who 11 may reasonably be considered to have participated in an offense [i.e., reciprocal or correlative] based upon the same or some of the same facts or conduct which constitute the offense charged ’ ’.
Professor Denzer, in the aforesaid Practice Commentary, tells us that the intent of paragraph (b) of subdivision 2 is to include ‘ ‘ persons who are in some way criminally implicated in, and possibly subject to, prosecution for the general conduct or factual transaction on trial ”, and its intended effect is to “ broaden the definition of an accomplice as the term is applied to witnesses, in order to provide a more equitable, operable and consistent standard for the courts in determining when the requirement of corroboration is applicable. ’ ’
Is the “ john ”, in our case, then deemed an accomplice of defendant Jackson, in the light of the history and intent, aforesaid, of CPL 60.22 (subd. 2, par. [b])! Is not the offense of patronizing a prostitute reciprocal and correlative to the offense of prostitution! The conduct of the patron and prostitute, and the circumstances or facts upon which it is based, are jointly identifiable as substantially the same, in that, its purpose is to engage with each other in sexual intercourse for hire. Prostitution and patronizing a prostitute cannot and do not exist independently of each other; they are alike in elemental quality in that they contemplate an agreement for a specific illegal purpose and for a fee. They are joined together in the commission of reciprocal offenses and each, therefore, is the accomplice of the other. It then follows that a conviction of defendant Jackson may not be supported upon the uncorroborated testimony of her patron.
Does this logic also apply to one accused of promoting prostitution, namely, defendant Goodman! Is not the offense of *798 patronizing a prostitute reciprocal to that of promoting, and is there not a mutuality of conduct, interest, and guilt in both offenses, contemplated by CPL 60.22 (subd. 2, par. [b]) ? I believe there is. They both knowingly aid prostitutes to ‘[1] commit or engage in prostitution ’ ’ and engage in conduct ‘ ‘ designed to * * * aid or facilitate an act or enterprise of prostitution ’ ’, condemned by sections 23GK15 and 230.20 of the Penal Law. There usually is a direct relationship, as alleged here, between the “ John ” and the promoter. The circumstances in this case would appear similarly to compel the requirement that the incriminating testimony of the patron be corroborated.
A joint reading of section 230.05 of the Penal Law together with the criminal sanctions against prostitution and promoting prostitution under the other sections of article 230 of the Penal Law militates for the acceptance of the broad view, that the legislative intent is to shroud the customer, retailer as well as the supplier, in joint guilt, in the attempt, if not to obliterate, then at least to ameliorate, this scourge. Separately and together they constitute part and parcel of the commercialized prostitution operation. Such interpretation is consistent with the requirement of corroboration as relates to other sex crimes, except those of a minor nature. (Penal Law, § 130.15.) (See, also, McKinney’s Cons. Laws of N. Y., Practice Commentary, Book 39, Penal Law, § 230.05, p. 71.)
Section 230.35 of the Penal Law has no application here, as defendants maintain. That section, and its predecessor, subdivision 9 of section 2460 of the former Penal Law, were intended to prohibit conviction of a procurer or promoter of prostitution upon the uncorroborated testimony of his working prostitutes, whose prostitution activity he was alleged to have advanced or attempted to advance. It was never intended or used to require corroboration of a “ john’s ” incriminating testimony against the procurer or promoter.
Similarly, People v. Guardino (177 Misc. 402, affd. 265 App. Div. 872, affd. 290 N. Y. 749, supra) and People v. Jelke (1 N Y 2d 321, supra) have no application here, as the prosecution maintains. They do not say that all prostitutes are not accomplices of their promoters or procurers. They do say that those prostitutes ‘ ‘ compelled ’ ’ by the promoter, cannot be said to be his accomplices. One compelled to perform an illegal act cannot be said to be a willing accomplice of the person exerting the compulsion. “ The purpose of the statute [i.e., former Penal Law, § 2460] is to protect women from compulsory prostitution *799 # * * not to make them partners in guilt with their procurers.” (Guardino, supra, p. 405).[2]
Where corroboration is required, as here, it must possess that quality which would tend ‘£ to connect the defendant with the commission of such offense ” CPL 60.22 (subd. 1).
A careful examination of Officer Torosian’s testimony appears to lack that quality. The corroborative evidence must do more than point to the possible commission of the crime. (People v. Nitzberg, 287 N. Y. 183, 191-192 [1941]; People v. Chamberlain, 38 A D 2d 306, 310 [1972].) “ More is required than is necessary to corroborate a confession * * * where the corroboration is sufficient if it supports the existence of the corpus delicti ” (People v. Jelke, supra, p. 332).
The officer’s testimony is equivocal and there is absent that measure of certainty which would so harmonize with the accomplice’s testimony as to have a tendency to furnish the necessary and inferential connection between the defendants and their respective crimes.
People v. Lorraine (196 N. Y. S. 323 [1922]) does not support the prosecution, as it -contends. There the “ john” told the police officers, while they were in the apartment with the prostitute, of his involvement with her. The court would not convict upon the uncorroborated testimony of the ££ john ” [3], but did convict, since there were other £ ‘ circumstances that would justify the conclusion that the parties had been engaged or were about to engage in an act of sexual intercourse ” (p. 324). Those circumstances, apparently, presented the necessary connection between the defendant and the crime.
Although it is clear that the defendants here may not be £ 1 convicted ” upon the uncorroborated testimony of the patron, and that sufficient corroboration is here lacking, we remain faced with the question whether or not the uncorroborated testimony in this preliminary hearing may survive for trial, or must the court dismiss the action now for failure of corroboration.
Although it appears unlikely that legally sufficient corroborative evidence will be presented at a trial, the prosecution, nevertheless, has the right to be afforded the opportunity to find it. In People v. Scarposi (69 Misc 2d 264) my learned associate, *800 Judge M. Marvin Berger, convincingly, has persuaded this court that corroboration, where needed, does not defeat a prosecution at the stage of a preliminary hearing but notwithstanding such failing, the action should be held over for trial, present the elements of the commission of the crime and reasonable cause to believe the defendants committed the crimes. (CPL 170.75.) Corroboration, where needed, becomes a vital element only at the trial to support a “conviction ”. (CPL 60.22, subd. 1.)
Accordingly, and in spite of the foregoing, I do find there is sufficient evidence to indicate the commission of the offenses charged and reasonable cause to believe that each defendant committed the respective offense charged. They are held for trial, although it may prove to be an exercise in futility.

. He was separately charged with patronizing a prostitute in violation of section 230.05 of the Penal Law. However, to induce him to testify on the People’s behalf, he was given immunity and his action was dismissed. The status of an accomplice is not altered by the immunity given. (CPL 60.22, subd. 3.)

. Although the prostitutes in this case were not deemed to be accomplices of one promoting prostitution, the court held that here the prostitutes’ testimony, nevertheless, required corroboration under the express terms of old Penal Law (§ 2460, subd. 9; now Penal Law, § 230.35). (People v. Jelke, supra, p. 333.)

. “Attorney for defendant stresses the point that defendant should not be convicted on the statements made to the officer by John Nicholas, and this point is well taken” (People v. Lorraine, supra, p. 324).