Jones, J.
We are called on to interpret the definition of accomplice now set forth in CPL 60.22 (subd. 2).
After a jury trial appellant was convicted of petit larceny for the theft of jewelry taken from a residence in the Woodsburgh section of Woodmere, Long Island. At the trial one Lo Monaco, a known receiver of stolen goods or ‘ ‘ fence ’ ’, to whom the police had been led by a confidential informer, appeared as a witness for the prosecution in exchange for a promise that he would not be prosecuted. He testified that in response to a telephone call concerning stolen property he went to appellant’s apart *477 ment where he purchased some jewelry from appellant. In answer to Lo Monaco’s inquiry appellant had said that the jewelry had come from the ‘ ‘ south shore “ around Woodmere or Lawrence ”.
The evidence disclosed that Lo Monaco had known appellant for about a year and had been to his apartment on 10 or 20 occasions. Lo Monaco admitted that he had bought jewelry from appellant more than once. He had no agreement with appellant, however, but if the latter had something he would contact Lo Monaco who would buy it. Lo Monaco testified that he had no prior knowledge that this particular theft was going to be committed or that he was going to get this lot of jewelry.
Appellant urges that the trial court committed reversible error in denying his request to charge that the jury could find that the witness Lo Monaco was an accomplice.
CPL 60.22 (subd. 2) provides as follows:
“ An ‘ accomplice ’ means a witness in a criminal action who, according to evidence adduced in such action, may reasonably be considered to have participated in:
“ (a) The offense charged; or
“ (b) An offense based upon the same or some of the same facts or conduct which constitute the offense charged.”
This definition replaced the previous judicially formulated rule under which the test was ‘‘ whether an alleged accomplice was so connected with the crime that he could have been convicted as a principal or as an accessory before the fact ”. (People v. Beaudet, 32 N Y 2d 371, 374.) The consequence of the adoption of this statutory definition is to “ broaden the definition of an accomplice as the term is applied to witnesses, in order to provide a more equitable, operable and consistent standard for the courts in determining when the requirement of corroboration is applicable ”. (McKinney’s Cons. Laws of N. Y., Book 11A, CPL 60.22, Practice Commentary, p. 195; People v. Beaudet, supra, p. 378).
Turning then to the application of the statutory definition to the facts of this case we first note that Lo Monaco was not an accomplice under paragraph (a); he could not reasonably be considered to have participated in the theft of the jewelry. The issue is whether he could be found to fall within the ambit of paragraph (b). We observe that perhaps in a mechanical, *478 literal sense Lo Monaco might be said to be an accomplice within the language of paragraph (b). That is, he might be considered to have participated in an offense, criminal possession of stolen property, one material element of which would have been the theft of the jewelry by appellant. We are satisfied, however, that in view of the history of our statutes no such result was ever intended. As Mr. Justice Learned Hand wrote in other contexts, “ There is no surer way to misread any document than to read it literally ” (Guiseppi v. Walling, 144 F. 2d 608, 624); and “ [o]f course it is true that the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing: be it a statute, a contract, or anything else. But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning.” (Cabell v. Markham, 148 F. 2d 737, 739.) “ This question cannot be answered by closing our eyes to everything except the naked words of the [statute]. The notion that because the words of a statute are plain, its meaning is also plain, is merely pernicious oversimplification.” (Mr. Justice Frankfurter dissenting in United States v. Monia, 317 U. S. 424, 431.)
The relationship between a thief and his fence presents a special situation in which for pragmatic as well as legal reasons both the two crimes and the two criminals must be viewed discretely. Under the former case law by which an accomplice was held to be one criminally responsible as either a principal or an accessory before the fact, we held in 1924 that the thief as a witness was an accomplice of the receiver in the prosecution of the latter for receiving stolen goods under section 1308 of the former Penal Law, and accordingly that corroboration of his testimony was required under then section 399 of the Code of Criminal Procedure. (People v. Kupperschmidt, 237 N. Y. 463.) In so concluding Judge Pound wrote for the court (p. 465), “ The fact that the receiver is not in the absence of prior accessorial acts an accomplice of the thief in the larceny is irrelevant.” We are aware of no responsible authority in New York holding that a receiver is an accomplice of the thief when, as here, there is no *479 proof of a prior agreement between them. Usually the two crimes of theft and receiving the proceeds of the theft are separate both in time and in operative components. The theft has been completed independently before the receiver has come on the scene, and the act of receiving occurs at a quite different place and at a subsequent time.
In consequence of the Kupperschmidt decision, in 1928 the Legislature added a new section, 1308-a, to the Penal Law, explicitly providing that a thief was not to be deemed an accomplice of the receiver, thus restoring the categorical separateness, in the absence of a prior arrangement between them, of the thief and the fence. We are aware of no distress among commentators or penologists that in the unique relationship between thief and receiver there should be recognized and maintained this wall of separation between the two sequential crimes.
There is nothing now in section 20.00 of the new Penal Law which suggests that it was -intended to obliterate this demarcation. The explicit direction that no corroboration is to be required when the thief testifies against the receiver is now carried over from former section 1308-a of the Penal Law to section 165.65 of the new Penal Law.
In our view, under both statutory and decisional law the relationship between thief and receiver has been the subject of specific attention, with the separateness of the two crimes recognized and preserved and all requirements of corroboration of the testimony of either criminal eliminated. As to the thief-to-receiver aspect of the relationship, the mometary judicial decision in Kupperschmidt [supra) to require corroboration was promptly reversed by statute.* There has been no occasion for explicit statutory address to the counterpart aspect, that of receiver-to-thief, since until now, it has never been suggested that in the absence of a prior arrangement between them the receiver was an accomplice of the thief. On this analysis we cannot conclude that the enactment of CPL 60.22 applying to accomplices generally was intended to destroy either aspect of *480 the classic separation between the crimes of theft and receiving stolen property. Our attention is invited to no legislative history which suggests that this was the specifically intended result of the enactment of CPL 60.22.
We cannot agree, therefore, with the proposition urged on us that CPL 60.22 (subd. 2, par. [b]) automatically makes every receiver an accomplice of the thief notwithstanding the absence of proof that the receiver procured or otherwise aided or abetted the thief in the commission of the larceny. Consideration of an instance in which stolen securities after perhaps several months of total concealment are disposed of through a fence theretofore completely unaware of the larceny, emphasizes the essential separateness of the two crimes. That in this case the time interval was shorter does not affect the conceptual analysis or call for a contrary determination. Had there been any evidence here of a prior agreement or arrangement between appellant and Lo Monaco or any evidence that Lo Monaco was otherwise criminally implicated in the larceny, the result would be different.
We find no substance to appellant’s argument that he was entitled to a hearing before the court denied his request for disclosure of the identity of the informer who led the police to Lo Monaco but who was neither a participant in nor a key witness to the crime of larceny (People v. Goggins, 34 N Y 2d 163). We have examined appellant’s other contentions and find them to be without merit.
Accordingly, the order of the Appellate Division should be affirmed.

 We note, in passing, as further evidence of the distinctive treatment accorded this subject, that section 165.65 of the Penal Law, as did its predecessor, section 1308-a, also eliminated any requirement of corroboration of testimony against the receiver by any third person to whom he had in turn sold or transferred the stolen property.