■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHARLES J. CRAFT, Appellant.—Judgment reversed, on the law and facts, and a new trial granted. Memorandum: The defendants Charles J. Craft and James P. Minney were each convicted, after a jury trial, of manslaughter in the first degree and murder in the second degree. They were acquitted of felony murder and two charges of robbery, first degree. On July 7, 1970 the body of Richard Ver Cruysse was found on the shore of Lake Erie, a short distance from 18-Mile Creek. While the body was weighted with a heavy cinder block and bound with telephone wire, the cause of death was determined to have been occasioned by compound fractures of the skull, and a very deep laceration of the lower lip going down to the mandibular bone and complete transsection of the larynx along with various stab-like wounds and other serious fractures. Arthur Schmoyer and Carol Hoover testified that on the evening of July 2, 1970 they were with the defendants when they killed a man named Rick on an island in 18-Mile Creek. Both witnesses were friends of the defendants and, although they lived in the 18-Mile Creek area, on the evening of July 1, 1970 both stayed as overnight guests in the home of defendant Craft in North Tonawanda, New York. It was then and there that they met Rick who also lived in the same building with his family. The defendant Minney was also present in the Craft home that evening and he told Schmoyer in reference to Rick that "we are going to get him" or "I am going to get him". The following evening Arthur Schmoyer and Carol Hoover met with the defendants and Rick in a bar in the 18-Mile Creek area where Schmoyer and Hoover had been drinking for some period of time. All five individuals left the tavern in Rick's convertible automobile, which he was driving, and proceeded to the home where Schmoyer and Hoover were staying. At this point Schmoyer secured a .32 caliber pistol which he showed to those present and, stating that it was an antique and inoperable, placed it in his back pocket. Schmoyer secured a shovel which was placed in the back of Rick's car. With Craft then driving Rick's auto and Schmoyer in the front seat with Rick, the auto proceeded a short distance when Craft drove down a side road which led to an island in 18-Mile Creek. The witnesses testified that the defendants grabbed Rick, took him to the front of the car where there was scuffling and a lot of thumping like somebody banging on the ground. Schmoyer claims that most of the time his back was to what was going on but he did turn around and saw

Minney with his hand in the air although he never saw the hand come down. Carol Hoover recalled Craft grabbing Rick and throwing him to the front of the car and she heard groaning and real heavy breathing. She noticed Craft's hand come down several times but saw nothing in it. She left the car and went over and joined Schmoyer standing at the creek bank at a point where Schmoyer said he threw the .32 caliber pistol into the water. According to the witness Hoover, the entire incident lasted 15 to 20 minutes and then she, Schmoyer and the defendants re-entered Rick's car. It was she who said "You guys aren't going to leave him lay there", at which point the defendants said "No" and pulled the body into the weeds. The foursome left in the auto to get some beer for Schmoyer and on the way, with Craft driving, Minney went through Rick's wallet and gave Schmoyer some money to buy beer. It was their testimony that Schmoyer bought a six pack and returned the change to Minney, refusing to keep it himself. They then proceeded to the home of some friends of Schmoyer and Hoover where Schmoyer took Craft and Minney to the garage where he watched them pick up a cinder block, some wire and other materials. Schmoyer and Hoover also directed defendants to a paddle and raft and the defendants returned the two witnesses to the home where they lived and left them there. Two to two and a half hours later, Carol Hoover stated that Minney returned the raft. Minney's clothes were wet. The next day Schmoyer and Hoover left for Buffalo and spent the next two evenings in hotels in that city. On the third day they traveled to Rochester, New York, where they stayed about a week when, through Schmoyer's grandfather, they were contacted by the police. The defendants contend that Schmoyer and Hoover were accomplices as a matter of law and that the trial court erred in submitting the question of their status to the jury as one of fact. Based upon the factual backdrop of the instant case and the involvement of the witnesses, we find that the complicity of Carol Hoover and Arthur Schmoyer was a question of fact properly left to the jury for its determination *(People v Basch,* 36 NY2d 154, 157). The court's charge, however, was erroneous. The status of the witnesses Schmoyer and Hoover was vital to the People's case and the definition of an accomplice was critical. Its importance is underscored by the return of the jury to request that the court recharge on the subject of accomplice testimony. In response, the court charged "to find that one is an accomplice, you must come to the conclusion that the evidence establishes that he or she criminally participated with the defendants in the commission of the crime charged. This participation must appear to you to have been in all of the elements of the crime, as I have charged them to you", and continued "and that such accomplice acted with the intent required to charge him with the crime. There must be evidence tending to show that the purported accomplice took part in the preparation or perpetration of the crime with the intent to assist." This charge was error and contrary to the clear language of CPL 60.22 (subd 2, par [b]) *(People v Fielding,* 39 NY2d 607, 610). As stated by this court: "The statute broadens the common-law definition of an accomplice ' "in order to provide a more equitable, operable and consistent standard for the courts in determining when the requirement of corroboration is applicable" ' *(People v Basch,* 36 NY2d 154, 157, quoting Denzer, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 60.22, p 195; accord, *People v McAuliffe,* 36 NY2d 820, 822 and *People v Brooks,* 34 NY2d 475, 477) and to implement more logically ' "the purpose of the 'accomplice' doctrine: namely, preclusion of conviction solely upon the testimony of persons who are *in some way* criminally implicated in, and possibly subject to, prosecution for the general conduct or factual transac-

tion on trial" ' *(People v Fielding,* 39 NY2d 607, 610, quoting Denzer, op cit, pp 194-195 [emphasis in original])" *(People v Werner,* 55 AD2d 317, 320-321). The error is sharpened by the fact that the erroneous charge came in response to a specific request for clarification by the jury *(People v Batchelor,* 57 AD2d 1059). We have considered the defendants' other contentions and find them to be without merit. We perceive no inconsistency or repugnancy in the verdicts *(People v Gross,* 51 AD2d 191). The judgments are reversed, on the facts and the law, and a new trial granted. All concur, Doerr and Moule, JJ., in the following memorandum.

Doerr and Moule, JJ. (concurring). We concur in the decision, but would hold as a matter of law that Arthur Schmoyer was an accomplice. (Appeal from judgment of Erie County Court—manslaughter and murder.) Present—Cardamone, J. P., Hancock, Jr., Callahan, Doerr and Moule, JJ.