Jasen, J.
(dissenting in part). I simply cannot agree with the majority’s restrictive, if not oppressive, construction of the statutory corroboration rule. (CPL 60.22, subd 1.) In holding that once a police officer is implicated in some way in a criminal scheme his testimony forever thereafter must be corroborated, even though he becomes officially an undercover police agent against his former cohorts, the majority has effectively and permanently deprived law enforcement of a *38 vital investigative technique — the use of the turncoat conspirator. The Legislature in enacting CPL 60.22 never could have intended to include undercover police agents as accomplices. An undercover agent is not an accomplice witness so long as he is gathering evidence for the prosecution of crime.
In cases involving well-organized criminal conspiracies, the use of undercover police agent testimony is usually necessary to break the conspiracy. It is common knowledge to all that a criminal conspiracy is, by its inherent nature, a close-knit organization. The activities of a conspiracy are shrouded by a protective cloak of secrecy not only to insulate its members from criminal prosecution, but, also, to ensure its very existence. The majority’s holding today, by unnecessarily shackling the forces of law enforcement in requiring the testimony of undercover police agents to be corroborated, serves only to strengthen the protective walls which surround all conspiracies and to provide nourishment for their continued well-being.
This case concerns the issue whether the testimony of two New York City police officers, both of whom at one time participated in a scheme whereby various gamblers immunized themselves from criminal arrest and prosecution by making payments to law enforcement officers, needs to be corroborated or, to the contrary, may serve as corroborating evidence when such testimony relates to events which occurred at a time when these officers were assigned undercover police agents co-operating fully with officials investigating corruption within the police force and were not members of the criminal conspiracy.
At trial, the case for the People proceeded on the theory that each of the defendants, all of whom had been members of the New York City Police Department, had assumed an active role in a detailed and calculated plan whereby periodic payments would be made to police officers by various gamblers to ensure that the latters’ illegal activity could be conducted without fear of prosecution. This criminal enterprise, known as a "pad” at the 13th Plainclothes Division, possessed all the attributes of a sophisticated business venture. Meetings were held at various times to formulate the governing rules and regulations of the pad, and plans to induce other gamblers to make- payments and to assimilate newly assigned division officers into the conspiracy were devised.
Further, certain of the officers were appointed to collect the *39 periodic payments, known as "contracts”, from the various gamblers who succumbed to the pad members’ inducement. The moneys were distributed to pad members by duly elected splitmen, and officers departing from the division would receive "severance pay” in the form of their share of two months’ pad payments. In addition, if a pad member was arrested for a crime committed in the course of the illegal scheme, he would be awarded the entire pad for two months to defer legal fees and other expenses.
After a jury trial at which the workings of the criminal enterprise and the defendants’ involvement therein were fully described, defendants were each convicted of one count of bribe receiving, one count of receiving a reward for official misconduct, two counts of conspiring to commit the aforementioned crimes, and one count of official misconduct. On appeal, the Appellate Division affirmed the judgments of conviction as to defendants Melnick, White, Bergold and Fortuna, but reversed the judgments of conviction and dismissed the indictments against defendants Reitano, Maroney, Brown, Conti, Carter, Cona, Auletta, Zummo, Mattina, Callis and Greene, finding that the evidence was legally insufficient to sustain their convictions inasmuch as there existed no independent proof to corroborate the accomplice testimony implicating these defendants as required by law. (CPL 60.22, subd 1.) I would modify the order of the Appellate Division by reinstating the convictions of defendants Reitano, Maroney, Brown, Conti, Carter, Cona, Auletta, Zummo and Mattina, and, as so modified, affirm.
The central issue on this appeal concerns the testimony of Officers James O’Brien and Stephen Buchalski, both of whom testified on behalf of the prosecution.[1] In June, 1970, O’Brien was assigned by Deputy Inspector William Bonacum to work as an undercover agent in the 13th division to investigate possible corruption. The evidence adduced at trial reveals that for the first few months of his assignment, O’Brien reported to Bonacum regularly and filed written reports on several occasions. However, sometime in October, 1970, O’Brien decided to *40 become a member of the criminal enterprise. In accordance with this testimony, the court, after admonishing the jury that "a conviction * * * cannot be had on the uncorroborated testimony of an accomplice”, charged that although O’Brien was an accomplice as a matter of law "at the very latest, some time in mid or late October of 1970,” it was for the jury to determine, "after evaluating all of the testimony”, whether he was an accomplice before that time. The court refused a defense request to charge that O’Brien was an accomplice as a matter of law with respect to all the transactions and observations he related at trial.
Officer Stephen Buchalski, who had been a member of the pad, agreed to co-operate with the officers conducting the investigation on January 10, 1972. On that date, Buchalski was confronted with proof of his criminal participation in the pad and, in exchange for the District Attorney’s offer of immunity as to his past involvement, assented to engage, in the future, various members of the criminal enterprise in conversations concerning pad operations and to tape-record those conversations. At trial, highly incriminating tape recordings of conversations with 10 of the defendants herein were admitted into evidence.
The court charged the jury that Officer Buchalski "was an accomplice as to all transactions and observations to which he testified which occurred prior to January 10, 1972.” It is apparent, however, that the court reasoned that inasmuch as Officer Buchalski agreed to co-operate with the officers conducting the investigation on January 10, he ceased to be an accomplice as of that date and no corroboration of his testimony as to events after January 10 was required.
The issue raised on this appeal and common to all defendants is whether the evidence submitted at trial was legally sufficient to support their convictions in light of the statutory command that "[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense.” (CPL 60.22, subd 1.) In order to decide this issue, it is necessary to resolve the specific question whether, as a matter of law, the testimony of both Officers James O’Brien and Stephen Buchalski as to events and observations occurring at a time when they were undercover police agents co-operating with the police department needed to be corroborated, or, to the contrary, whether those *41 statements as to events and observations when they were no longer criminally involved could themselves serve as corroborating evidence of defendants’ wrongdoings.
The term "accomplice”, for purposes of the corroboration rule (CPL 60.22, subd 1), is defined by statute as "a witness in a criminal action who, according to evidence adduced in such action, may reasonably be considered to have participated in: (a) The offense charged; or (b) An offense based upon the same or some of the same facts or conduct which constitute the offense charged.” (CPL 60.22, subd 2.) It has been observed that the intent of the Legislature in enacting this provision was to "broaden the definition of an accomplice” so that the purpose of the accomplice corroboration rule — "namely, preclusion of conviction solely upon the testimony of persons who are in some way criminally implicated in, and possibly subject to, prosecution for the general conduct or factual transaction on trial” — could best be effectuated. (Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 60.22, pp 194-195; see People v Dorta, 46 NY2d 818, 820; People v Basch, 36 NY2d 154, 157; People v Beaudet, 32 NY2d 371, 378; People v Jackson, 69 Misc 2d 793, 796-797; Rothblatt, Criminal Law of New York, CPL, pp 76-77.)
While the expansiveness of the statutory definition of "accomplice” embodied in CPL 60.22 (subd 2) cannot be disputed, this definition has been construed by this court as encompassing only those persons found, in some manner, to be criminally implicated in the offenses charged. (See, e.g., People v Dorta, 46 NY2d 818, supra; People v Fielding, 39 NY2d 607, 610; People v Basch, 36 NY2d 154, supra; People v Brooks, 34 NY2d 475.) Of course, when rendering this determination, the question of whether or not the alleged accomplice harbored the requisite criminal intent to engage in the illegal transaction is a critical consideration. (See People v Wheatman, 31 NY2d 12, 22; People v Jackerson, 247 NY 36, 42.)
It is beyond dispute that a police officer who works as a decoy or undercover agent in an effort to ferret out evidence of criminal transactions is not criminally implicated in the conduct involved and, therefore, is not an accomplice whose testimony would require corroboration. (People v Swift, 161 Misc 851, affd 251 App Div 808, affd 277 NY 618; People v Noelke, 94 NY 136, 141; see 1 Underhill’s Criminal Evidence [5th ed], § 182, p 385.) This is so because such an officer, although feigning criminal participation, does not harbor any *42 criminal intent to violate the law, nor does he possess any motive to fabricate a story in an attempt to avoid prosecution. In short, his testimony is not of such suspect nature as to require corroboration, and, indeed, may serve as corroborating evidence if the jury accepts it as true.
Applying these principles to the case now before us, I conclude that the trial court properly instructed the jury that Officer Buchalski ceased to be an accomplice, as a matter of law, on January 10, 1972 — the date on which he agreed to cooperate in the investigation and become an undercover police agent. Further, in my opinion, the Trial Judge properly submitted the question of whether or not Officer O’Brien was an accomplice before October, 1970 to the trier of the facts, inasmuch as evidence adduced at trial could reasonably be viewed by the jurors as indicating that prior to that month Officer O’Brien was not acting as an accomplice, but, rather, was working in his assigned undercover capacity.
This conclusion that the Trial Judge properly instructed the jury as to the accomplice status of Officers Buchalski and O’Brien is predicated not only upon the observation that these officers were not accomplices while working in their undercover capacity, but, also, upon the recognition that their testimony as to events which occurred at a time when they were not participating criminally in the pad does not suffer from the infirmity of unreliability which the corroboration statute seeks to remedy. As perceptively noted by the dissent at the Appellate Division, Officer Buchalski, while acting as an agent of the District Attorney’s office, "no longer had a motive 'to share his guilt with others such as [defendants].’ ” His participation in the illegal activities had ended as of January 10, 1972, and "all of his actions from that time forward were not those of an accomplice.” (60 AD2d, p 333.)
Further, with respect to Officer O’Brien’s testimony concerning events occurring before the time he admitted joining the conspiracy, indicia of trustworthiness are supplied by the fact that he had regularly reported, or attempted to report, to his superior officer information concerning the ongoing criminal activity within the 13th division. It should be stressed, however, that the determination of when O’Brien joined the conspiracy properly remained an issue of fact for the jury.[2]
*43 It follows that inasmuch as Officer Buchalski ceased to be an accomplice as of January 10, 1972, and Officer O’Brien, if the jury chose to credit his testimony, did not become an accomplice prior to October, 1970, they would not be "accomplices” within the meaning and spirit of CPL 60.22 (subd 2) and, thus, their testimony as to events occurring when they were not criminal participants in the pad would not require corroboration, and, indeed, could serve as corroborating evidence.[3] I would hold that one who participates in a criminal enterprise for the purpose of obtaining evidence upon which to convict other participants is not an accomplice as he is not criminally liable for that activity. I find no compelling reason to construe the statute, as does the majority, that a witness once a conspirator is forever condemned to testimonial impotence. Nor do I agree that a duly authorized undercover police agent who later joins the conspiracy should have his nonconspiratorial testimony subject, as a matter of law, to corroboration. With this in mind, I now address the more narrow issue as to what evidence could be considered corroborative of the accomplice testimony implicating the various defendants.
With regard to defendants Reitano, Maroney, Brown, Carter, Conti, Cona and Auletta, the Appellate Division predicated its reversal of the convictions of these defendants on the ground that Officer Buchalski’s testimony identifying the defendants’ voices on the tapes could not serve to "constitute independent proof 'tending to connect’ the seven above-named [defendants] with the crimes charged.” (60 AD2d, p 325.) I disagree.
*44 Since these tape recordings were made at a time when Officer Buchalski was co-operating fully with the investigation of the criminal scheme, his testimony identifying the voices of these seven defendants on the tape recordings needed no corroboration. Such testimony, together with his testimony relating to these tape recordings, could serve to corroborate the testimony of other accomplice witnesses implicating these defendants in the criminal enterprise.
As to defendants Zummo and Mattina, Officer O’Brien testified that while he was on assignment with defendants Zummo and Mattina during the evening hours of September 22, 1970, these defendants received $990 from one Percy Peart, a known gambler. Further, Officer O’Brien testified that on the next day he attended a pad meeting at which Zummo and Mattina were present. Insofar as these events occurred at a time when the jury could reasonably have found that Officer O’Brien was acting in his undercover capacity, the jurors could, in accordance with the Trial Judge’s instruction, use this testimony to corroborate that of other accomplice witnesses if the jury found O’Brien not to be an accomplice during this period.
I would affirm the convictions of defendants Melnick, White, Bergold and Fortuna for the reasons stated in the majority opinion at the Appellate Division. I would only add, however, that with respect to defendants Melnick, White and Bergold, Officer Buchalski’s testimony concerning the highly incriminating tape-recorded conversations with these three defendants needed no corroboration.
With respect to defendants Callis and Greene, I would agree with the Appellate Division and the majority herein that there is insufficient evidence in the record to corroborate the accomplice testimony implicating these defendants.
A few concluding remarks are necessary. In espousing its unyielding, unjustifiable and unsupported construction of the statutory corroboration rule, the majority has not only artificially elevated form over substance so as to impede the efforts of law enforcement, but, in addition, has failed to comprehend that the corroboration rule is predicated not upon the recognition or protection of constitutional rights of an accused, but rather, upon a legislative determination that the testimony of those persons who may be implicated in the criminal transaction on trial is inherently suspect. As such, this court should *45 be even more restrained to accord the statutory corroboration rule a wide-sweeping construction, especially where, as here, there exists absolutely no justification for such interpretation of the statutory language.
It should also be noted that it is the rule in Federal courts that a person accused of a crime may be convicted exclusively upon the uncorroborated testimony of an accomplice or coconspirator, his status as such being only one factor, albeit an important one, for the jury to consider when assessing the credibility of the witness. (See, e.g., United States v Wright, 573 F2d 681, 685, cert den 436 US 949; United States v Sigal, 572 F2d 1320, 1325; United States v Abrahamson, 568 F2d 604, 607; United States v Trevino, 565 F2d 1317, 1319, cert den 435 US 971; United States v Gunter, 546 F2d 861, 869, cert den 431 US 920; United States v Bermudez, 526 F2d 89, 99, cert den 425 US 970.) Indeed, a considerable number of our sister States have also adopted this approach. (See, e.g., Reed v People, 156 Col 450; People v Wilson, 66 111 2d 346; Martin v State, 258 Ind 83; State v Horton, 275 NC 651, cert den 398 US 959; Brown v Commonwealth, 208 Va 512; State v Rolax, 3 Wash App 653.)
I deem it necessary as well to voice my disagreement with the stance taken by the majority of this court that, on this appeal, we are unable to reach and decide the pure question of law whether Officer Buchalski’s testimony concerning events which occurred after he became a police undercover agent could serve as corroborating evidence. (See CPL 470.35, subd 2.) Not only did the Appellate Division pass upon this issue of law, thus preserving it for our review (see People v Ermo, 47 NY2d 863, 865-866 [Jasen, J., concurring]), but, in addition, all the defendants preserved this question of law by interposing a motion at the close of the People’s case to dismiss all the counts of the indictment on the ground that the prosecution had failed to establish a prima facie case against them.. As part of their argument, defendants stressed in detail that there was insufficient evidence, as a matter of law, to corroborate the testimony of the accomplice witnesses. The Trial Judge, in deciding the issue presented by these motions, unequivocally stated that the major issue was that of corroboration. Under these circumstances, and since the majority at the Appellate Division not only reached the issue but specifically predicated its determination upon the ground of legal insufficiency of the evidence, I am compelled to conclude that *46 the issue of law concerning Buchalski’s testimony was properly before us for our adjudication.
Finally, I would note that although the majority would modify the order of the Appellate Division "by reinstating the convictions of defendants Reitano, Maroney, Brown, Conti, Carter, Cona and Auletta” and remitting the case as to those defendants "to the Appellate Division for that court to determine whether to exercise its discretionary power to review defendants’ accomplice corroboration claim in the absence of any timely objection”, the result — reversal of those judgments of convictions — is a foregone conclusion in view of the majority’s holding that a duly authorized undercover police agent, under the circumstances presented, is an accomplice to the crimes charged against these defendants, so that his testimony must be corroborated. The end result for these jury-convicted defendants will be acquittal.
For these reasons, I would modify the order of the Appellate Division by reinstating the convictions of defendants Reitano, Maroney, Brown, Conti, Carter, Cona, Auletta, Zummo and Mattina and remit the case as to said defendants to the Appellate Division, Second Department, for a determination of the facts (CPL 470.40, subd 2, par [b]), and, as modified, affirm.

. Officer Edward Phillips, a one-time member of the pad, also testified on behalf of the prosecution. His testimony, however, is not at issue here inasmuch as the court charged the jury that Patrolman Phillips was an accomplice, as a matter of law, "as to all of the transactions and observations he testified to in this case.” Accordingly, the jury was informed that it could not use any of Phillips’ testimony to corroborate that of other accomplice witnesses.

. The court stressed to the jury that a defendant’s conviction could not be sustained solely on the testimony of an accomplice unsupported by corroborative evidence. A fair reading of the Trial Judge’s charge indicates that the jurors were *43 informed that if they determined Officer O’Brien to be an accomplice at some time before October, 1970, they could not use his testimony to corroborate that of accomplice witnesses if Officer O’Brien’s testimony concerned events or observations which occurred subsequent to the time the jurors determined O’Brien to be an accomplice.

. I do not consider this conclusion with odds with CPL 60.22 (subd 3) which provides that "[a] witness who is an accomplice * * * is no less such because a prosecution or conviction of himself would be barred or precluded by some defense or exemption, such as * * * immunity * * * amounting to a collateral impediment to such a prosecution or conviction, not affecting the conclusion that such witness engaged in the conduct constituting the offense with the mental state required for the commission thereof.” This statutory provision addresses only the situation where witnesses, having knowingly engaged in the criminal offense, subsequently agree to testify on behalf of the prosecution as to events which occurred in the course of their participation. It has no application to a case where, as here, the witnesses are testifying to events which occurred at a time when they were not "engaged in the conduct constituting the offense with the mental state required for the commission thereof.”