Fuchsberg, J.
(dissenting). Invited, of course, to do so by its management, plaintiff, a restaurant patron, deposited her fur coat, now found to have been worth $7,500, at the defendant’s cloakroom at the plush Rainbow Grill in Rockefeller Center. Without explanation, it was never to be returned. Yet, the majority would relegate her to a recovery of $75. Neither the history or public policy of the statutory scheme which governs such a case, nor the common sense or the elementary fairness that go with a living law will abide such a result. I therefore vote to uphold the Trial Term award to the plaintiff for the full amount of her loss as thereafter unanimously affirmed by the Appellate Division. Here follow my reasons, grounded, I would like to believe, on principle, practicality and, withal, sound law.
I start with section 201 of the General Business Law, which as we have seen, so drastically and arbitrarily limits the amount which even the grievously damaged patronbailor may recover for the loss of property entrusted without separate fee to restaurants, hotels or, since they arrived on the scene, motels. Indeed, its provisions, enacted, as the *510 legislative history makes clear, at the instance of restaurant and hotel industry functionaries, are so harsh that, even when a restaurateur, hotelkeeper or motel owner to whom an article is committed is proved to have knowingly engaged a dishonest checkroom attendant, collectable damages may not exceed the more munificient sum of $100. This cap, I might add, has remained unaltered since it was fixed in the antedeluvian monetary times of 57 years ago.
But, as one might have suspected, there had to be and, indeed, are compensating provisions designed to ameliorate the confiscatory nature of this scheme or at least to warn those who otherwise could be caught within its web. So, when a patron requests a receipt containing the declared value of the item he or she decides to check, the limitations are inoperative, and the restaurant, hotel or motel resumes its traditional liability for full value (General Business Law, § 201).
Now, it goes without saying that, unless a restaurant proffers receipts and invites declarations, or unless patrons in some other manner are advised of the existence of this option (or, for that matter, of the limitations that prevail in the absence of its exercise), it would be but a secret, and, therefore, ineffective privilege. It was to avoid this paradoxical consequence that the Legislature, apparently recognizing that almost no one is likely to consult the Consolidated Laws before deciding to dine out, enacted section 206 as an auxiliary to the statutory scheme. In my view, this provision, a precondition to the enforcement of the limitation preferences granted restaurants by section 201, requires them to informatively post a printed copy of the statute in a conspicuous place and manner. This, concededly, the defendant here did not do. Yet, because the posting appendage, though part of what Judge Cardozo called a “connected plan” embracing both restaurants and hotels (Honig v Riley, 244 NY 105, 109), does not refer to restaurants by name, the majority, by choosing to deal with section 206 as though it stood in isolation rather than as a dependent part of a whole, would stultify the salutary purpose it was intended to achieve.
It takes no missionary zeal to observe that, while canons *511 of construction are helpful, they can never take the place of reasoned analysis (Beary v City of Rye, 44 NY2d 398, 410-411; Becker v Huss Co., 43 NY2d 527, 533). Signposts at best, they are not to be followed blindly when they appear to point in the wrong direction. All the more is this so when we treat with a statute which Judge Cardozo also deservedly characterized as “clumsy and inartificial” (Honig v Riley, supra, at p 109). For, the notion that, because words are plain, their meaning is also plain is “merely pernicious oversimplification” (United States v Monia, 317 US 424, 431 [Frankfurter, J., dissenting], quoted in People v Brooks, 34 NY2d 475, 478). So, when words, read literally, lead to an unreasonable result plainly at variance with the policy of legislation as a whole, a court must look “to the purposes bf the act” (New York State Bankers Assn. v Albright, 38 NY2d 430, 437). Or, as we suggested, in Brooks, the goal of judicial inquiry is not always to be satisfied by a “mechanical” reading of a statute, but rather by understanding that its phrases have “ ‘some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning’ ” (People v Brooks, supra, at p 478, quoting Cabell v Markham, 148 F2d 737, 739 [Learned Hand, J.]).
Turning then to the purpose of the statute before us now, its genesis goes back to the days when, if food and drink were to be provided outside the home, it was primarily the business of the innkeeper to provide it. In this unitary concept, the same responsibility was borne toward the wayfarer who applied for lodging and the one who applied for a meal. One of these in the beginning was that of absolute liability, as an insurer, for the loss of a guest’s property and, later, a combination of statutorily fixed limited liability matched by compulsory safeguards against loss (Zaldin v Concord Hotel, 48 NY2d 107; 111-112, and authorities cited therein). However, with time, as a growing urban population developed an everincreasing habit of taking meals at restaurants, the obligation of its proprietors was reduced to that imposed by the general law of negligence (Montgomery v Ladjing, 30 Misc 92; Simpson v Rourke, 13 Misc 230).
*512 Then, the year 1924 saw the birth of the legislation which Judge Cardozo so critically was to describe that same year and which we, as his successors, today confront. Its intended goal and format, as described in hotel terms by the counsel to the New York State Hotel Association and the Hotel Association of New York City, who did the drafting, is revealing: “Heretofore the hotelkeeper has been practically at the mercy of the unscrupulous guest and has often been compelled to pay heavy claims for the loss of property from store-rooms and checking-rooms in cases where, when the property was originally deposited with the hotel-keeper, he had no knowledge of the real value thereof nor was such value called to his attention by the guest. The * * * bill relieves the situation and at the same time works no hardship on the guest, for all he is required to do is to notify the hotelkeeper of the value of the property at the time of depositing the same. Furthermore, when so notified, the hotelkeeper at all times continues to be liable for the full value of such property in case of negligence, and copies of the law are required to lie posted, pursuant to Section 206 of the General Business Law” (emphasis added; legislative bill jacket, Document No. 3, L 1924, ch 506).
As formally enacted, however, the bill, to be known as section 201, without further definition, put restaurants within the ambit of its general protection. Then, significantly, when it was construed by this court, Judge Cardozo made clear that, however ineptly presented, its inclusion of restaurants made them part of an integrated whole. Specifically, he not only referred to them “in conjunction with the provisions immediately preceding it as part of a connected plan,” but also declared that “the statute is not aimed at the protection of proprietors of restaurants exclusively”. Crucially, he went on to say that, “[/]or the purpose of the new exemption, proprietors of inns and proprietors of restaurants are grouped as a single class” (Honig v Riley, 244 NY 105, 110, supra [emphasis added]).[1]
That sensible crossover among the different sections of *513 the General Business Law was intended is well illustrated by these observations. For “the new exemption” for “proprietors of restaurants” to which Honig refers is also contained in article 12 of the General Business Law under what ordinarily might be regarded as the misleading heading “Hotels and Boarding Houses”. It follows from this most confusing arrangement that the posting requirement applicable to hotels, if they are to make any sense, must be deemed equally applicable to restaurants.
It was in the same vein that, in 1960, section 201 was amended to include, as had been the case with restaurants, the newly emerging motel industry as well. On that occasion, in language again reflecting the recognized tradeoff between the benefits and obligations of the statutory framework, the Department of Commerce and the Association of the Bar of the City of New York advised the Governor that those desiring the protection should be “subjected to the posting provisions of the law” (legislative bill jacket, Document Nos. 14, 31, L 1960, ch 840).
Sound policy too supports this conclusion. In the past, this court, dehors the present context, has repeatedly emphasized that it would be misleading and unfair to allow a hotel to assert a limited liability when it had not posted a copy of a statute so that a guest would be “notified of the true situation and acts with knowledge” (Millhiser v Beau Site Co., 251 NY 290, 296). It would be equally misleading and unfair for one who patronizes a restaurant to be confronted with a defense of limited liability without such notice. (See, also, Klar v H & M Parcel Room, 270 App Div 538, 542, affd 296 NY 1044 [claim check limiting damages recoverable for loss at parcel room in railroad terminal, though otherwise comporting with public policy, held inadequate in absence of “conspicuous signs * * * calling attention to the limitation * * * or that there was any opportunity afforded to plaintiffs to assent to or dissent from the alleged contract”]).
In fine, history and policy lead to inexorable conclusions: The Legislature did not intend to extend the salutary benefits of section 201 of the General Business Law to the proprietors of either restaurants, hotels or motels without *514 appropriate notice of the condition — exaction of a receipt containing a statement of value — without which the most extensive loss would bring but a pittance. When the bill was originally enacted, it would have served nothing but an impermissibly overprecious and overliteral reading to assume it intended to charge only hotels with its posting requirement, when, though its hotel sponsors had ignored restaurants, the Legislature affirmatively and expressly took the trouble to include them within the “connected” statutory scheme (Matter of Allstate Ins. Co. v Shaw, 52 NY2d 818, 820-821).
Therefore, while, no doubt, the statutory language could be clearer, it surely is remiss not to give effect to the clear-cut underlying intent that, at least for checkroom posting purposes, restaurants are in the “same class” with the other kinds of establishments to be found in the related subdivisions of the statute.
It is for all these reasons that the order of the Appellate Division should be affirmed.[2]
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones and Wachtler concur with Judge Meyer; Judge Fuchs-berg dissents and votes to affirm in a separate opinion.
Order modified, with costs to defendant in all courts, in accordance with the opinion herein and, as so modified, affirmed.

. Examination of the record in Honig reveals that the posting provision was not raised in that case.

. The majority’s passing reference to an unpleaded conversion action in the circumstances of this case can serve no practical purpose, since an attempt to activate such a theory could hope to do no more than launch a trusting and factually uninformed patron on a legally frustrating “fool’s errand”.